### CODDINGTON *vs.* DAVIS and others.

The endorser of a bill or note may, before the paper matures, make a valid agreement to waive a presentment and notice of non-payment. Such an agreement does not require a consideration to support it.

Where an endorser of a note had been preferred in respect to his liability, in an assignment made by the maker for the benefit of his creditors, and had transferred to the holder his interest under the assignment, and afterwards, while the note was running to maturity, wrote to the holder, saying: "You need not protest T. B. C.'s note, due &c. for &c., and I will waive the necessity of protest thereof;" *held* sufficient to dispense with a presentment and notice of non-payment.

The letter itself without the other circumstances, would have been a valid waiver of a demand and notice. *Per* JEWETT, J.

The term *protest*, though strictly inapplicable to a promissory note means when

used in a general way, the steps necessary to be taken to charge an endorser. *Per* JEWETT, J.

Where the maker of a note, before it became payable, assigned his property to a trustee for the payment of his debts, preferring the endorser, who transferred his interest under the assignment, to the holder; *held* that no demand or notice of non-payment were necessary to enable the holder to recover against the endorser

General words used in an agreement, are to be so restricted as to subserve the intentions of the parties.

Accordingly, where the maker of a promissory note which was held by an endorsee made an assignment for the benefit of his creditors, preferring the endorser as a creditor to the amount of the note, and the holder for a separate debt due him on account, and the holder in conjunction with other creditors of the maker, executed an instrument referring to the assignment, and agreeing in consideration thereof, to discharge the maker from *all claims and demands* existing in their favor respectively against him, over and above what they might realize under the assignment on his agreeing to pay the balance of their debts, after the expiration of seven years; *held* that the claim of the holder upon the note was not discharged or suspended—the agreement as regarded him, being only applicable to his other demand against the maker.

ERROR from the superior court of the city of New-York. Charles Davis and others, composing the firm of Davis, Brooks & Co., sued Samuel Coddington, in the court below, and claimed to recover as endorsees of a promissory note for $10,000, dated December 31, 1839, made by Thomas B. Coddington, payable to the order of Samuel Coddington, the defendant, thirty days after date, which was endorsed by the defendant. On the trial, after proving the defendant's endorsement, the plaintiffs proved and gave in evidence a letter to themselves, from the defendant, in the following words: "Mess. Davis, Brooks & Co. Gent. Please not protest T. B. Coddington's note due 2nd Feb'y, for $10,000, and I will waive the necessity of the protest thereof; and oblige yours, resp'ly, &c. Samuel Coddington. New-York, Jan. 28, 1840." The plaintiffs then rested; and the defendant moved for a nonsuit, on the ground that the letter did not contain a sufficient waiver of a demand of the maker, or of notice of non-payment. The motion was denied, and the defendant excepted.

The defendant's counsel then produced, proved and gave in evidence the following papers. 1. An assignment executed by

the maker, T. B. Coddington, under his hand and seal, to Charles Davis, one of the plaintiffs, dated January 23d, 1840, of all the assignor's goods, chattels and choses in action, in trust, to convert them into money, and to pay his debts according to the order of preference mentioned in several schedules annexed. Among the creditors named in the schedule of those to be first paid, the defendant and the plaintiffs were mentioned in the following manner. "Samuel Coddington, for endorsement, $10,000; Do. for do. $1185,44; Do. for balance of acct. $2078,40; Davis, Brooks & Co. $1000." 2. A paper written at the foot of the assignment subscribed by C. Davis, the assignee, stating that he accepted the assignment, and agreed to execute it. 3. An order signed by the defendant, addressed to C. Davis, as assignee, bearing the same date with the assignment, directing him to pay to the order of the plaintiffs, "any and all moneys that may be received by you as assignee for my account, of Thomas B. Coddington as fast as collected to the extent of ten thousand dollars;" and an acceptance written on the order, and signed by the assignee, payable "conformably to the order and terms of the assignment of T. B. Coddington." 4. An instrument dated February 8th, 1840, signed by the plaintiffs and several other creditors of T. B. Coddington, reciting that T. B. C. was indebted to them respectively and had made an assignment for their benefit and the benefit of his other creditors; in consideration whereof, and of one dollar &c. they, in terms, release, discharge and forever acquit him, T. B. C., from all claims, demands, liabilities, judgments and other responsibilities existing against him, beyond what they may realize under the assignment, he T. B. C., however to give them respectively, his written promise to pay them at the expiration of seven years, any balance of their debts against him which may remain after exhausting the assignment.

The plaintiffs' counsel then proved and gave in evidence, an agreement signed by T. B. Coddington, by which he undertook to pay them at the expiration of seven years from the date, any deficiency of his indebtedness to them "in notes, book accounts, endorsements or otherwise," beyond what they might realize under his assignment; and also, a letter addressed to them by

**T. B.** Coddington, on the 25th January, 1840, stating that he had made an assignment mentioning the name of the assignee, and referring them for further information to his attorney.

It was admitted that the assignee had paid the plaintiffs $2800 on account of the assignment, but that the assigned property had not all been disposed of, or the trust closed.

The defendant's counsel still insisted that the defendant had not been duly charged as endorser, and also maintained that the instrument of the 8th February, 1840, operated to discharge the maker from the note sued on ; but if not that said instrument and the written promise of the maker to pay the balance at the end of seven years, was a valid extension of the time of payment, which discharged the endorser; and he requested the court to charge the affirmative of these several propositions. The court refused so to charge, but instructed the jury that neither of said objections to the recovery was well taken, and that under the circumstances of the case no demand of the maker or notice to the endorser was necessary to be proved; and the defendant's counsel excepted. The jury found a verdict for the plaintiffs for the balance of the note, upon which the court gave judgment, and the defendant brought error to this court.

*L. Livingston,* for the plaintiff in error. 1. The waiver of *protest* does not dispense with the obligation to present the paper for payment and to give notice of its dishonor. A protest is only applicable to a foreign bill, and it is no part of the duty of the notary to give notice of non-payment of such a bill. (*Bank of Rochester* v. *Gray,* 2 *Hill,* 227 ; *Union Bank* v. *Hyde,* 6 *Wheat.* 572 ; *Young* v. *Bryan, id.* 146.) The term protest, therefore, does not include the idea of a notice of non-payment. (*See also Story on Bills,* 302, *note* 2.) Agreements between holder and endorser are to be construed strictly. (*Story on Prom. Notes,* 314, 315.) A waiver of notice of non-payment does not dispense with the demand of payment. (*Berkshire Bank* v. *Jones,* 6 *Mass.* 524; *Backus* v. *Shipherd,* 11 *Wend.* 629.) 2. The paper executed on the 8th day of February discharged the defendant as an endorser. It was either a virtual

release (*Heathcote* v. *Crookshanks*, 2 *T. R.* 27, *per Buller, J.*; *Hosack's ex'rs* v. *Rogers*, 25 *Wend.* 339, *per Cowen, J.*) or an extension of the time of payment, (3 *Kent's Com.* 111,) either of which would discharge the endorser.

*C. O'Conor*, for the defendants in error. 1. The word *protest* in the defendant's letter, was a short method of expressing the idea of a demand and notice of non-payment. (*Union Bank* v. *Hyde, cited sup.; Stat.* 1833, *p.* 395, § 8; *Stat.* 1837, *p.* 554, § 1.) 2. A waiver of notice may not dispense with a demand of payment, yet it does not follow that a waiver of demand does not excuse a want of notice. There can regularly be no notice where there has been no demand. 3. But no demand or notice was necessary. The defendant, by force of the transactions proved by the papers, had become the party primarily liable for the note. (*Corney* v. *De Costar*, 1 *Esp.* 303; *Bond* v. *Farnham*, 5 *Mass.* 171; *Com. Bank* v. *Hughes*, 17 *Wend.* 98; *Moore* v. *Small*, 2 *Greenl.* 210; 3 *Kent's Com.* 113; 17 *Wend.* 407; 2 *Conn.* 478; 1 *John. Cas.* 99; *Boyd* v. *Cleavland*, 4 *Pick.* 527.) The plaintiffs' engagement to give time of payment is not applicable to the note in question, but relates solely to their further debt mentioned in the schedule of preferred debts. The instrument called a release is without consideration.

*By the Court*, JEWETT, J. The endorsement of a note, in contemplation of law, amounts to a contract on the part of the endorser to the effect, among other things, that when duly presented, if it is not paid by the maker, he, the endorser, will, upon due and reasonable notice given him of the dishonor, pay the same to the holder. (*Story on Prom. Notes*, § 135.) In this case the plaintiffs, endorsees of the note upon which the action is brought, omitted both to present the note for payment at maturity, and to give notice to the defendant of its non-payment; but relied for a recovery upon the waiver of both, alleged to be contained in the defendant's letter, which was given in evidence.

Upon this, two questions have been made : *first*, whether it is

Coddington *v.* Davis.

competent for an endorser, prior to the maturity of the note, to waive the necessity of such presentment and notice, and remain subject to the same liability as though these conditions had been duly performed : and *second,* whether there is evidence of such waiver in this case.

1. The reason why a demand of payment and notice of non-payment of a promissory note are required in order to charge the endorser is, that he is in the nature of a surety only, his undertaking not being absolute but conditional. He is to pay only in the event of a demand made on the maker at the time when the note becomes due, and of a refusal or neglect on his part, and due notice. This rule being introduced for the benefit of the endorser, he may waive the necessity of such demand and notice in accordance with the maxim, that any one may, at his pleasure, renounce the benefit of a stipulation or other right, introduced entirely in his own favor. (2 *Inst.* 183 ; 10 *Rep.* 101 ; 1 *Selw. N. P.* 10*th ed.* 358 ; *Story on Prom. Notes,* § 271.) In the case of *Leffingwell* v. *White,* (1 *John. Cas.* 99,) the action was on a promissory note, against the endorser. Before it became due the defendant stated to the holder, that the maker had absconded, and that, being secured, he would give a new note, and requested time. The court said the defendant had admitted his responsibility, treated the note as his own, and negotiated for further time for payment, by which conduct he had waived the necessity of any demand or notice. When the agreement or waiver is prior to the maturity of the note, it dispenses with a due presentment; and it would operate as a fraud upon the holder, if the objection of want of presentment were available afterwards ; since he may have omitted the steps which he would otherwise have taken in consequence of the defendant's agreement. In such a case it makes no difference whether the agreement were for a valuable consideration or not, since, if it were not held obligatory, it would be a manifest detriment to the holder occasioned by the fraud or breach of faith of the endorser. (*Story on Bills,* § 371, 373 ; *Story on Prom. Notes,* § 271.)

2. It is insisted that there is no evidence of a waiver, either

of a demand or notice. The evidence on which the plaintiffs rely is, *first*, the assignment executed by the maker and the acceptance of the trust by the assignee, together with the order drawn by the defendant in favor of the plaintiffs on the assignee and his acceptance of it. *Second*, the defendant's letter of the 28th day of January, 1840, requesting that the note might not be protested, and in terms waiving the necessity of a protest.

It is true, as a general remark, that agreements of this sort are to be construed strictly and not extended beyond the fair import of the terms used. It is also true that a demand of payment and notice of non-payment of a promissory note are not only distinct and different acts from that of protest, but that by the general law merchant strictly, no protest is required to be made upon the dishonor of any promissory note; but the use of a protest is exclusively confined to foreign bills of exchange. (*Story on Prom. Notes*, § 272; *Backus* v. *Shipherd*, 11 *Wend.* 629; *Burke* v. *McKay*, 2 *Howard's Rep.* 66; *Young* v. *Bryan*, 6 *Wheat. Rep.* 146; *The Union Bank* v. *Hyde, id.* 572.)

In the case of *Backus* v. *Shipherd*, the plaintiff claimed to recover, in the court below, against the defendant, as the endorser of a note, and relied upon a stipulation written over the defendant's endorsement as a waiver of presentment and of notice. It was to the effect that if the plaintiff should not be able to collect the note of the maker by due course of law, the defendant would consider himself responsible for the same *without requiring notice of non-payment.* There was also a count on the instrument as a guaranty. On the trial, the judge instructed the jury that the defendant was not liable as endorser for the want of a demand of payment, nor on the guaranty, because the plaintiff had not used due diligence in prosecuting the maker. The defendant had judgment, which this court reversed on error. In giving the opinion of the court, Nelson, J. said : " The first question raised in this case, I believe, has not been decided by this court ; but as a general proposition, we have no hesitation in saying that a stipulation by the endorser of a note to waive notice of demand upon the maker, does not, according to the law merchant, dispense with the demand itself. They are dis-

tinct acts, and each a condition precedent to the right of recovery by the holder. The endorser, in waiving notice, may rely upon an assurance or conviction that the note will be paid by the maker, if demanded when due." " I cannot, however, entertain a doubt, that by the stipulation between the parties the demand as well as notice was waived. It required the plaintiff to enforce the collection of the note by due course of law, and if unsuccessful, the defendant engaged to pay it." The case of the *Union Bank* v. *Hyde* was this : The action was against an endorser of a promissory note payable at the plaintiffs' bank. No demand or notice of non-payment was proved, but the plaintiffs gave in evidence an instrument in writing signed by the defendant, as follows : " I do request that hereafter any notes that may fall due in the Union Bank, on which I am or may be endorser, shall not be protested, as I will consider myself bound in the same manner as if the said notes had been or should be legally protested." It was insisted that this amounted to a stipulation to waive demand and notice. Two constructions were contended for : the one, literal, formal, vernacular ; the other, resting on the spirit and meaning, as a mercantile and bank transaction. The court below sustained the former, and held that the plaintiffs could not recover. The judgment was reversed in the supreme court of the United States, on the ground that the writing was ambiguous, as to whether it amounted to a waiver of a demand and notice ; and that the sense in which the parties used the words might fairly be sought in the practical exposition furnished by their own conduct, or the conventional use of language established by their own customs or received opinions. And there was evidence that the parties had practically construed the writing as a waiver of demand and notice.

It is a maxim that a liberal construction shall be put upon written instruments, so as to uphold them, if possible, and carry into effect the intention of the parties ; and it is essential to consider the subject matter of the agreement, in affixing a meaning to its terms. (*Parkhurst* v. *Smith, Willes' Rep.* 332.) It is said in *Gunnison* v. *Bancroft.* (11 *Verm. Rep.* 493,) that the language used by a party to a contract must be construed as he expected

the other party to understand it, or as the other party had a right to understand it. So, in construing a contract, it is a rule that the court will look to the motive that led to it, and the object intended to be effected by it. (*Davis* v. *Barney*, 2 *Gill & John.* 382.) It is laid down in *Com. Dig. Agreement,* (*C.*) that a contract shall have a reasonable construction according to the intent of the parties.

The question returns, what is the true construction of the defendant's letter? The counsel for the defendant contends, in effect, that no legal meaning can be attached to it; that, as the act requested to be omitted was inapplicable to the note in question, and unnecessary to charge the defendant as endorser, the defendant's promise to waive that act was idle and unmeaning. He insists that the acts which were necessary to be performed by the plaintiffs, to charge the defendant, were to make demand of payment, and if refused or neglected, to give notice to the defendant of non-payment, and not to protest the note. Let it be admitted that the words used were doubtful or equivocal; the first thing we ought to inquire into is, what was the intention of the defendant and the understanding of the plaintiffs? For if these were identical and referred to some distinct, definite matter, we ought, if possible, to put such a construction on the language as will best answer the end which both parties had in view, and reject any construction which would tend to overturn and disappoint their intention. Too much regard ought not to be had to the usual or technical signification of words or sentences, where it is clear the result would be to frustrate the design of the parties. In order, therefore, to see what construction should be put upon this letter, let us inquire what were the defendant's motives that led him to write it, and the object which he intended to effect. The maker, some ten days before the maturity of the note, had become insolvent, and made an assignment of his property, by which a large amount of assets had been devoted to the payment of his debts. The defendant, for his liability as endorser of this note, and for an indebtedness of more than $3000 besides, had, with his assent, been in effect preferred to all others. The maturity of the note

Coddington *v.* Davis.

was very near : he knew the maker would not and could not pay
it; he had himself transferred to the plaintiffs to apply towards
payment of this note, his right to the dividend to arise out of
the assigned property applicable to the note; but this, in the
course of such business, could not be realized until after the
note would become payable. He must therefore have expected
that the holders, unless prevented, would have taken the ordi-
nary steps to charge him as endorser. He resided in a mercan-
tile community, where more or less discredit attaches to the
parties to a dishonored note. Is it not evident that his object
in making the request and promise contained in the letter was
as well to obtain delay as to avoid the mortification and expense
attendant upon a demand of payment and notice of non-pay-
ment of the note ? And is it not equally clear that the plaintiffs
understood, and had a right, from the circumstances of the case,
to regard the communication as the expression of a wish that
the usual measures should be omitted, and as an undertaking to
be subject to the same liability as though they had been regu-
larly taken ? To my mind this is entirely plain. And I think
this intention and understanding of the parties is palpable, as
well from the evidence of the facts mentioned, as from the terms
of his request and promise, irrespective of the other incidents.
I think that in mercantile, as well as in legal language, the
word protest used in connection with a promissory note en-
dorsed, as the defendant used it, is understood to mean the
taking of such steps as by law are required to charge an en-
dorser—that is, demand and notice. Although strictly there is
no necessity for formally protesting a promissory note for non-
payment, a simple demand of payment, and if refused or neg-
lected, notice to the endorser of such demand and refusal being
sufficient, yet in practice, in this country, payment of such notes
is demanded, and if not paid they are protested for non-pay-
ment and notice of such protest is served on the endorser.
This, when done, is briefly expressed among commercial and
professional men as well as by courts, by saying the note was
or has been protested—and the fees of protest are legally re-
coverable of the endorser. (*Bank of Rochester* v. *Gould*, 9

*Wend.* 279 ; *Campbell* v. *Cook, id.* 492 ; *Merritt* v. *Benton,* 10 *id.* 116 ; *Smedes* v. *Utica Bank,* 20 *John. Rep.* 384.) And the legislature has provided and regulated the fees for such protest and service of notice, and has also declared that the certificate of the notary of the fact in regard to the making of the demand and service of notice in certain cases shall be evidence of such facts. (*Laws of* 1833, *ch.* 271, § 8; *Laws of* 1835, *ch.* 307, § 2.)

Again ; I think the taking and accepting the security by the defendant under the assignment made by the maker for his liability as endorser of this note, connected with the circumstances and the acts of the defendant under it, may be deemed a waiver of presentment and notice, within the principles sanctioned by several cases. (*Mechanics' Bank of N. Y.* v. *Griswold,* 7 *Wend.* 165 ; *Spencer* v. *Harvey,* 17 *id.* 489 ; *Bond* v. *Farnham,* 5 *Mass. R.* 171.)

But the plaintiff in error further insists that the paper subscribed by the plaintiffs and others, bearing date February 8th, 1840, was a valid release and discharge of the maker, and consequently extinguished the liability of the defendant as endorser. This stipulation recited and referred to the assignment made by the maker a few days before, and the two instruments must be read together to ascertain the intention of the parties. The maker of the note had assigned his property in trust, after defraying the expenses, for the payment of his creditors according to a certain order of preference. In the class to be first paid the defendant was named as a creditor for a sum of $10,000, which was stated to be " for endorsement;" for a further sum also for endorsement, and still an additional amount for the balance of account; and the plaintiffs were mentioned in this list as creditors for $1000 only. They were likewise put down in the second class as creditors to the amount of $2000. The paper signed by the plaintiffs and other creditors was manifestly intended to include nothing more than the claims or debts, thus enumerated in the assignment as due and owing from **T. B.** Coddington to the several persons and firms who signed the stipulation. It is evident from what had transpired between

Samuel Coddington and the plaintiffs, in relation to the note for $10,000 in question, as well as what appears from the assignment, that the plaintiffs and both the Coddingtons treated this note as the proper debt of the defendant to the plaintiffs, and it was not considered at the time the last mentioned paper was signed, as a debt against T. B. Coddington. Although there are general words in this stipulation comprehensive enough to include this note, yet I think sufficient appears in the assignment to which it refers, to show clearly that they should be restricted in their effect to the debts specified therein as owing by T. B. Coddington to the plaintiffs. (*Jackson* v. *Stackhouse*, 1 *Cowen*, 122; *Bruen* v. *Marquand*, 17 *John*. 58; *Averill* v. *Lyman*, 18 *Pick*. 346.)

The same answer disposes of the argument that the instrument referred to was a valid extension of the time of payment of the balance of the note after crediting what might be realized on the assignment. The balance of the plaintiffs' demand, for the payment of which they were to wait seven years, did not include the amount due on the note, but referred solely to the other demands which, in the schedule annexed to the assignment, were set down as owing to them.

I think there was no error in the judgment of the court below.

Judgment affirmed.