Beals *v.* Peck.

---

[MONROE GENERAL TERM, December 2, 1851. *Welles, Selden* and *Johnson,* Justices.]

---

BEALS *vs.* PECK and others, adm'rs of Reynold Peck, impleaded with A. Lamphire.

Where a notice of protest states that the note has been protested for non-payment, and that the holders look to the indorser for the payment thereof, this is sufficient, although it does not allege a demand and refusal.

The word *protest* or *protested*, when used in reference to commercial paper, imports the taking of such steps as are requisite to charge the drawer and indorsers, viz. demand and refusal.

Where a notice of protest describes a note corresponding with the one given in evidence, as to amount, maker and indorser, and contains what is equivalent to a statement of the time it became due, this is a sufficient description of the note ; in the absence of any evidence that there were other notes in existence, to which the notice would apply.

Notice of protest, to one of several executors or administrators of a deceased indorser, is sufficient.

Where a note matured, and was protested, after the death of an indorser, and the notary, being ignorant of his death, directed a notice of protest

to him, at his former place of residence, and the same was taken from the post office by the direction of a subsequent indorser and delivered to the administrators of the deceased; *Held*, that this was a sufficient service of the notice, and that it need not be addressed to the administrators in their representative character.

THIS was an action upon a promissory note made by the defendant, Amon Lamphire, to the order of and indorsed by Reynold Peck. The complaint alledged the making of the note, and the indorsement of the same by Reynold Peck, in his lifetime. The following is a copy of the note :

" $800.                    West Bloomfield, September 10, 1849.

Three months after date, for value received, I promise to pay to the order of Mr. Reynold Peck, eight hundred dollars, at D. Brigham & Co.'s office, in the city of New-York.

(Signed) AMON LAMPHIRE."

(Indorsed) " REYNOLD PECK."

The defendant, Amon Lamphire, did not appear in the action. The defendants, the administrators of Reynold Peck, appeared and put in their answer under oath, taking issue upon the allegations in the complaint.

The action was tried at the Ontario circuit in June, 1850, before Selden, justice, when a verdict was found for the plaintiff for $826,87, upon which judgment was rendered. The administrators appealed from that judgment. Upon the trial the plaintiff proved, that on the 13th day of December, 1849, the note was duly presented by William Bloomfield, a notary public, at the place designated therein for the payment of the same, and payment thereof demanded and refused; and that on the 14th day of December aforesaid, a notice was by him deposited in the post office in the city of New-York, directed to "Reynold Peck, West Bloomfield, Ontario county, N. Y." of which the following is a copy :

" New-York, Dec. 13, 1849.

Sir—Please to take notice that a promissory note made by Amon Lamphire for $800, indorsed by you, was this day pro-

tested for non-payment, and that the holders look to you for the payment thereof.

Your obedient servant,

WIILLIAM BLOOMFIELD

Notary public and attorney at law."

This notice was mailed and postmarked at New-York, December 14th, directed on the outside as above, which was the only direction upon it, showing to whom the same was addressed. Solon Peck, a witness for the plaintiff, testified as follows : " In December last I was postmaster at West Bloomfield, in this county. Some time in that month I received a communication by mail, from the plaintiff, who resides at Canandaigua, in this county, in reference to a certain note indorsed by Reynold Peck, held by him. In that communication the plaintiff inclosed to me a notice of protest, which he stated had been received by him from New-York, and also stated that there would probably be a similar notice for Reynold Peck, postmarked " New-York city ;" and requested me to take it from the office and deliver it to the administrators of Mr. Peck's estate, and get from them an acknowledgment of the notice of protest. I can not state the day, but think it was the 17th of December. There was no Sunday mail to West Bloomfield. I think I replied to it the same day I received it. The same day I received the communication from Mr. Beals, a letter came to the post office addressed to Reynold Peck, and postmarked at New-York. I supposed it to be the notice alluded to by the plaintiff, and I took it from the office and delivered it to Vinton Peck in the presence of Mr. Leach, both of whom are administrators of the estate of Reynold Peck. Mr. Peck took the letter and opened it. I asked him if it was a notice of protest, and he said it was. I then showed him the notice received by me from Mr. Beals, and he said it was similar, or the same in substance."

It appeared that Reynold Peck, the indorser, died, and administrators of his estate were appointed before the maturity of the note. That it was made and indorsed and was discounted by the plaintiff for the benefit of the maker ; and evidence was given tending to show that the plaintiff had knowledge of the

indorser's death, and of the appointment of his administrators, before the note became due. It was admitted that the notice mailed at New-York by the notary, and directed to Reynold Peck, as above stated, was the same notice handed by the witness, Solon Peck, to the defendant, Vinton Peck. The making of the note by the defendant Lamphire, and the indorsement thereof by Reynold Peck in his lifetime, were duly proved. The plaintiff then rested. The defendants' counsel moved for a nonsuit, upon the grounds that the notice of protest was defective and insufficient: 1st, in not stating that payment of the note had been demanded and refused; 2d, in not sufficiently describing the note; also, that there was no evidence that all the administrators of Reynold Peck had received the notice, and that notice to two of the administrators was not sufficient to charge the estate. Also, that under the evidence in the case, a notice directed to Reynold Peck was not sufficient, though received by the administrators; that it should have been addressed to them in their representative character. Other grounds for the motion were stated, but not urged on the motion for a new trial, and therefore not repeated here.

The motion for a nonsuit was denied, and the defendants' counsel excepted. The judge charged the jury that the question of the sufficiency of the proof of a due protest of the note in suit, and of the notice of the non-payment of the same, so as to charge the estate of the indorser, Reynold Peck, was a question of law for the court to decide; and with that they had nothing to do. And the court did thereupon charge and instruct the jury that the evidence of the non-payment and protest of the note, and of notice thereof, which had been made by the plaintiff, was sufficient to charge the defendants as administrators of the estate of Reynold Peck; to which the defendants' counsel excepted.

*A. Worden*, for the appellants.

*T. M. Howell*, for the respondent.

*By the Court,* WELLES J.   The first question in order in this case, is upon the sufficiency of the notice of the dishonor of the note in question.   It is not denied, as I understand, that the note was in fact sufficiently demanded, and at the proper time and place, or that payment was refused.   It is claimed that the notice was insufficient, inasmuch as it does not state such demand and refusal, and that it does not sufficiently identify the note in question.   The notice merely stated that the note was protested for non-payment ; and the question is upon the legal import of the word *protested,* as used in the notice.   If it necessarily conveyed the idea that the note had been presented at the proper time and place, and payment thereof demanded and refused, giving notice that it had been protested, was equivalent to saying it had been duly demanded and payment refused.   It is unimportant what form of words is used, provided they convey to the indorser the requisite information.

Although strictly, no formal protest is necessary to charge an indorser of a promissory note, as is the case with respect to a foreign bill of exchange, yet what the import of the word includes in the latter, is equally necessary in both cases.   In the case of a foreign bill, it has always been held, both in England and this country, that the protest for non-acceptance implies the presentation at the proper time and place, and refusal to accept ; and a protest for non-payment, a proper demand and refusal ; and notice that the bill has been protested, is a brief mode of informing the drawer and indorsers of the dishonor of the paper. (*Story on Bills of Exc.* § 276, note 2.    *Coddington* v. *Davis,* 3 *Denio,* 16, 25.    *S. C. in error,* 1 *Comst.* 186.)

In the present case, the same course has been adopted, and the like notice given, upon another form of commercial paper, but resembling in effect, almost identically, a bill of exchange. The relations and liabilities of the acceptor and indorsers of a bill of exchange, to the holder, correspond exactly with those of the maker and indorsers of a promissory note to the holder thereof ; and the rules of law affecting the former, are generally equally applicable to both. (*Chitty on Bills, Phil. ed. of* 1821, *p.* 420, 421.)

VOL. XII.                     32

It seems to me, therefore, as the word *protest*, and its preterit *protested*, are words of well known signification among business and commercial men, when used in relation to commercial paper, and are necessarily understood to mean the taking of such steps, in the case of a bill of exchange, as are requisite to charge the indorser and drawer, except the notice ; that is, demand and refusal ; that when used in reference to a promissory note, the same force and meaning attaches to them, as would when used in relation to a bill of exchange ; and that they import a demand and refusal, as much in the one case as the other.   This seems to have been the opinion of Justice Jewett in the case of *Coddington* v. *Davis*, (*supra*,) in this court, and of Judge Gardiner in the same case in error.   The cases of *Dole* v. *Gould*, (5 *Barb. S. C. R.* 490,) and *Boulton* v. *Welch*, (3 *Bing N. C.* 688, *S. C.* 32 *Eng. Com. L. R.* 283,) cited by the defendant's counsel, do not conflict with the foregoing view.   The notice did not, in either of those cases, state that the note had been protested, and nothing is said by the court in either case as to the import or effect of that word.   In both cases, the notices stated what had been done at the maturity of the notes, and in neither was it stated that the note had been demanded of the maker. In the case at bar, I have attempted to show that the word *protested*, imports both demand and refusal, and upon that ground I place my opinion.   In the case of the *Cayuga Co. Bank* v. *Warden*, (1 *Comst.* 413,) the notice, in this respect, was in substance like the one in the present case, and was held sufficient ; and in *Stocken* v. *Collins*, (9 *Car. & P.* 653, *S. C.* 38 *Eng. Com. L. R.* 273,) a notice that the note was *dishonored*, was held sufficient in form.   (*See also, Mills* v. *Bank of U. S.* 11 *Wheat.* 431.)

Next, as to whether the note is sufficiently described in the notice.

The notice described a note corresponding with the one given in evidence, as to amount, maker and indorser, and contained what was equivalent to a statement of the time it became due ; for the notice is dated December 13, 1849, and stated that the note was that day protested for non-payment.   The indorser

Beals *v.* Peck.

would therefore understand that it was a note which matured on that day.   The note in question was dated September 10, was payable three months after date, and consequently matured on the 13th of December   This, in my judgment, was sufficient. If there were other similar notes in existence, to which the notice would apply, it was incumbent upon the defendants to prove it.   No presumption to that effect, in the absence of evidence, is to be indulged.   If there was no other, then, most clearly, the indorser could not mistake as to what note was intended by the notice.   If there had been a misdescription in any particular, as was the case in *The Cayuga County Bank* v. *Warden*, it might throw the burthen upon the plaintiff of proving that no note, to which the misdescription could apply, had ever been given.   The case of *Beauchamp* v. *Cash*, (16 *Eng. Com. L. R.* 410.) cited by the defendant's counsel, was a case of misdescription.

It is also contended on the part of the defendants, that "the indorser being dead, the notice should have been directed to his administrators, and given to all of them."

The note in question was payable at D. Brigham & Co.'s office, in the city of New-York.   There was no evidence showing that the notary had any notice or knowledge of the death of the indorser, at the time the note fell due, but there was evidence tending to show that the plaintiff then knew of the indorser's death, and that the defendants were his administrators.   The plaintiff was a banker in Canandaigua, and advanced the money to the maker upon the note, upon its being made and indorsed. The notice of protest on its face, contained no direction to any one, but was directed on the outside to Reynold Peck, the indorser.   This notice was, by request of the plaintiff, handed to Vinton Peck, one of the administrators, and was opened and examined by him, in the presence of Leach, one of his co-administrators.   I think there is no doubt that in the case of two or more joint indorsers, being partners, a notice of protest served on one of them is sufficient to charge them all. (*Story on Bills of Exc.* § 305, *and authorities cited in note 3. Story on Prom. Notes,* §§ 299, 308.)   Though it is otherwise if they are not partners. (*Story on Prom. Notes,* § 308. *Willis* v. *Green,* 5 *Hill,*

232.) The reason seems to be, that in the case of a partnership, each partner represents the interest of the others, and of the partnership. Executors and administrators are regarded in the same light. They all represent one and the same interest. (2 *R. S.* 244, § 5.) I am disposed upon the whole, to hold that notice of protest to one of several executors or administrators of a deceased indorser, is sufficient: and consequently, if the notice in the case at bar was sufficiently served on one of the administrators of Reynold Peck, it was sufficient.

It only remains to consider whether the notice being in form directed to the decedent by name after his death, and not to his administrators, was sufficient. The fact no doubt happened in consequence of the notary being ignorant of the indorser's death. He directed the notice to him at the place of his residence while living, and in the same manner as if he had been living. It was delivered to one of his administrators the same day that it was received at the post office at West Bloomfield, to which place it was directed, and where the administrators all resided. It is not indispensable that the notice should be in writing. It may be by a verbal statement to the party who is to receive it. (*Story on Prom. Notes*, § 341.) It has been held that where the indorser died before the note matured, and at the maturity of the note, no letters of administration or testamentary on his estate had been granted, a notice of protest directed in form to the decedent as if living, and sent to the place where he resided at the time of his death, was sufficient. (*Stewart* v. *Ex'rs of Eden*, 2 *Caines' R.* 121. *Merchant's Bank* v. *Ex'rs of Birch*, 17 *John.* 25.) These cases show that there is no inflexible rule as to the person to whom the notice should be directed. All that the law requires, is the exercise of due and proper diligence on the part of the holder or notary, in conveying the requisite information to the person who is to receive it, and I have no doubt that the notice may be either written or verbal, or partly written and partly verbal. If the person who is to give the notice, having a written statement of the contents, or a copy of the note, without any thing else in writing, shows or delivers the same to the person to be served, and at the same time

Carter *v.* Hammett.

informs him that the original note so represented by the statement or copy of it, has been duly protested, &c. no one will deny that such a notice would be sufficient. And so if a second indorser is duly served with a full notice directed to himself only, and he shows or hands it to a prior indorser or drawer of the same paper, with a statement that it had been served upon him, there can be no doubt but the notice would be good. In short, any thing that brings home direct notice of the dishonor of the paper ought to be held sufficient. In the present case, the plaintiff, who was a subsequent indorser, directed the witness, who was postmaster at West Bloomfield, to take the notice, which was directed to the decedent by name, and deliver it to his administrators, which was immediately done. It would in my opinion, be allowing the administrator to stultify himself, to permit him to say he did not understand what it all meant, or to allow him to deny due notice of the dishonor of the note in question.

There were several other points made at the trial, as appears by the bill of exceptions, but which were not made upon the argument. I shall therefore treat them as abandoned.

It follows that the judgment at special term must be affirmed.

Ordered accordingly.

[MONROE GENERAL TERM, December 2, 1851. *Welles, Selden* and *Johnson,* Justices.]