Youngs *v.* Lee.

Judgment reversed.

[NEW-YORK GENERAL TERM, June 1, 1854. *Mitchell, Roosevelt* and *Clerke,* Justices.]

————————◆————————

YOUNGS and HOWELL *vs.* LEE, impleaded with Bell & Goodman.

A notice of protest, which gives the names of the makers and indorser, and the amount, of a promissory note, is a sufficient description of the note; in the absence of proof that there were other notes in existence to which the notice would apply.

Where a notice of protest states that a note has been protested for non-payment, and that the holders look to the indorser for payment thereof, this is sufficient, although it does not allege a demand and refusal of payment.

The mere discharge of an antecedent debt is a valuable consideration within the meaning of the rule which protects and confirms the title of the holder, for value, of negotiable paper, when the transaction is made in the usual course of business, before the paper has arrived at maturity.

A note for $1000 was made by B. and G. and indorsed by L. for their accommodation, upon an understanding that the same should be discounted, and the proceeds applied to the payment of a previous note for $1000, made by B. and G. and indorsed by L., and then outstanding and about to become due. B. and G. being indebted to the plaintiffs upon a promissory note for $943.31 given by them for goods purchased, transferred to them the $1000 note so indorsed by L., in payment of their indebtedness upon the said note, to the plain-

tiffs and the note of $943.81 was given up and canceled. *Held,* that the plaintiffs were *bona fide* holders of the $1000 note; the original debt having been *prima facie* discharged, by the taking of the negotiable note of the debtors by the plaintiffs, and by the surrendering of the note for $943.81 to be canceled, upon the faith of the $1000 note received in exchange; and that they were entitled to recover from the indorser as well as the makers, the amount they paid for it, with interest; and no more.

MOTION for a new trial, on a bill of exceptions. The action was brought against the defendants Bell & Goodman as makers, and the defendant Lee as indorser, of a promissory note, in words and figures following :

"$1000.                       Rochester, July 4, 1851.

Three months after date, for value received, we promise to pay to the order of Charles M. Lee, at the American Exchange Bank, New-York, one thousand dollars.

      (Signed)              BELL & GOODMAN."

Indorsed " CHARLES M. LEE."

. On the trial at the Monroe circuit in October, 1853, the plaintiff proved the making of the note by the defendants Bell & Goodman and the indorsement by the defendant Lee. Also the presentation and demand of payment at the American Exchange Bank, in the city of New-York, by a notary public, on the 7th day of October, 1851, the non-payment and protest, and that a notice was deposited by the notary in the post office, in the city of New-York, on the 8th day of October, 1851, addressed to " Charles M. Lee," Rochester, N. Y., his place of residence, which note was in the words and figures following :

                   " New-York, October 7, 1851.

Mr. Charles M. Lee, Rochester, N. Y.

Sir : Please to take notice, that a promissory note drawn by Bell & Goodman for $1000, indorsed by you, is protested for non-payment, and that the holders look to you for payment thereof.          Your obedient servant;

      (Signed)          A. R. RODGERS, Notary Public."

The remaining facts, as they appeared upon the trial, are sufficiently stated in the opinion of the court.

*J. B. Bennett,* for the plaintiffs.

*L. Farrar,* for the defendant Lee.

*By the Court,* WELLES, J: It is objected on the part of the defendant Lee, that the notice of the dishonor of the note was insufficient. The objections are, 1st, that the notice does not sufficiently identify the note ; and 2d, that it does not state that the note had been presented for payment, and payment refused ; nor any other facts conveying information to the indorser that the steps had been taken by the holder which were necessary to fix the liability of the indorser. In the case of *Beals* v. *Peck,* (12 *Barb.* 245,) the notice was similar to the one in this case, and the same objections to it, among others, were urged, as in the present case. We there held the notice sufficient in both particulars. For the reasons stated in the case referred to, we think the objections made to the notice in this case cannot be sustained.

It was also objected at the trial that the notice was not served in season, it having been deposited in the post office the next day after the maturity and protest of the note. This is not now made a point by the defendant, and may be regarded as abandoned. The notice was clearly served in time.

A more difficult and important question involved in the case, is, whether the plaintiffs are to be regarded as *bona fide* purchasers of the note in question, within the commercial sense of that expression. Evidence was given at the trial tending to show that the note was indorsed by the defendant Lee at the request and for the accommodation of Bell & Goodman, the makers, under and in pursuance of an agreement between them and Lee, that the former should procure the same to be discounted, and obtain the money thereon at any bank they might choose, or at which they might be able to procure it to be discounted, and apply such money to the payment of another note of the same amount, previously made by them, and indorsed for their accommodation by said Lee, and negotiated by said Bell & Goodman, and then outstanding and about to become due.

That the firm of Bell & Goodman were indebted to the plaintiffs upon a promissory note of $943.31, made by said Bell & Goodman to the plaintiffs, payable at the Commercial Bank of Rochester, and which became due on the 4th day of July, 1851. This note was given for goods purchased by the firm of Bell & Goodman, of the plaintiffs : That on the first day of July, 1851, the firm of Bell & Goodman transmitted the note for $1000, upon which this action is brought, and indorsed by the defendant Lee, to the plaintiffs, and requested them to receive the same, and withdraw from the Commercial Bank of Rochester, (to which the same had been sent for collection,) and surrender to said Bell & Goodman, the said note of $943.31. The balance of the proceeds of the $1000 note to be adjusted between the plaintiffs and Bell & Goodman at a future time. The plaintiffs, on receipt of the said note of $1000, sent to Bell & Goodman an order on the Commercial Bank for the delivery to them of the note of $943.31, directing the cashier to deliver the said last mentioned note to Bell & Goodman, stating that the same had been settled. This order was received on the 3d day of July, 1851, by Bell & Goodman, who, on the same day delivered it to the bank, and received from the bank the note for $943.31. Upon this evidence, the judge at the circuit directed a verdict for the plaintiffs for $1144.59, that being the amount of the note in question and interest to the day of the trial. There was no evidence tending to show that the defendant Lee had been legally charged or made liable upon the $1000 note, to provide for the payment of which the note in suit had been made and indorsed, and no evidence showing any thing further respecting that note, or whether it had ever been paid or was still outstanding.

We will consider the question, whether, assuming that Lee had been compelled to pay that note, or is now liable upon it, the plaintiffs received the note in suit under such circumstances as to render it an available security in their hands, against the defendant Lee, who was an accommodation indorser for the makers, by whom it was transferred to the plaintiffs, who received the same in good faith, and upon a consideration suffi-

Youngs *v.* Lee.

cient, beyond doubt, as between them and the makers. This consideration was the note of $943.31, previously given by Bell & Goodman for goods purchased by them of the plaintiffs, which upon receiving the note in suit, they caused to be delivered up and canceled.

The general rule in relation to the sale of property, real and personal, including choses in action, is, that the purchaser can acquire no other or better title or right of action, than his vendor had in the subject of the sale. A prominent exception to this rule, is, that in the case of the transfer of commercial paper, if the purchaser receives it in the usual course of business, before maturity, without fraud and for a valuable consideration paid or given at the time of the transfer, he takes it discharged from all the objections and equities existing against it at the time of the transfer, in favor of any of the parties to it. This exception to the general rule is one of great importance, and is founded upon principles of commercial policy. In this, as in many of the reported cases, the question turns upon whether the plaintiffs paid, at the time of the transfer, a valuable consideration for the note upon which the action is brought.

It is objected on behalf of this defendant that the plaintiffs received the note in question upon a pre-existing debt, and that in delivering up and canceling the note of $943.31, they parted with no substantial right, inasmuch as, in case the endorser is not liable to them upon this note, their right of action for the goods sold to Bell & Goodman, for which the note of $943.31 was given, would not be thereby affected. It is undoubtedly true that where a note made by a third person is transferred by a debtor to his creditor, on account of a pre-existing debt, the creditor takes it subject to all the equities existing in relation to it, in the hands of the debtor. He is not, in such case, a *bona fide* purchaser, within the rule, or rather, the exception to the general rule. But this, I apprehend is to be taken as applicable only to cases where no security is surrendered and the pre-existing debt is not thereby discharged; and that where even the negotiable paper of the debtor alone is given up and canceled, the purchaser will be protected. Admitting that the plain-

tiffs in the present case could have recovered against Bell &
Goodman the amount of the note surrendered, under the facts
stated, it does not follow that they have parted with nothing of
substantial value. Their demand against Bell & Goodman, in
the shape of negotiable bank paper, was better and more available
on many accounts, than if it remained in an open unliquidated ac-
count. The original debt was *prima facie* discharged; first, by
their taking the negotiable note of their debtors; and, second,
by their surrendering such note to be canceled, upon the faith
of the note in question, received by them.

In the case of *The Bank of Salina* v. *Babcock,* (21 *Wend.*
499,) Nelson, Ch. J., said, " The court ought not to speculate
about the probability of reviving these canceled securities, in
case the paper, upon the strength of which they were canceled,
should turn out to be unavailable; much less ought we to go
into a calculation of the chances of revival as the ground of de-
feating the substituted security." See also *Bank of Sandusky*
v. *Scoville and others,* (24 *Wend.* 115,) and *White and Shef-
field* v. *The Springfield Bank and others,* (3 *Sandf. S. C. R.*
222.) All these cases, and particularly the last one, hold the
doctrine, that the mere discharge of an antecedent debt is a val-
uable consideration, within the meaning of the rule which pro-
tects and confirms the title of the holder, for value, of negotiable
paper, when the transaction is made in the usual course of busi-
ness, before the paper has arrived at maturity. None of the
cases to which we have been referred, nor any which I have met
with, establish a contrary doctrine.

I am aware that expressions are to be found in the opinions
of judges in some of the cases, which seem to favor the position
of the defendant in this case; but they are invariably mere
*obiter dicta,* not called for by the facts in the cases, and unneces-
sary to their decision.

If I have taken a correct view of the question, it follows that
the plaintiffs are *bona fide* purchasers and holders of the note
upon which the action is brought, and entitled to recover from
the indorser, as well as the makers, the amount they paid for it
with interest, and no more. (*Stalker* v *McDonald,* 6 *Hill,* 93 *to*

96. *Edwards* v *Jones*, 7 *Carr. & Payne*, 633.) The verdict, however, was for $1144.59, being the amount of the $1000 note with interest. The amount they paid for it was the note for $943.31, due July 4th, 1851, which, with interest from that day to the 21st day of October, 1853, the day of the trial, 2 years, 3 months and 17 days, amounts to $1094.95. This was the amount the plaintiffs were entitled to recover against the indorser, and no more. For the error of the judge, in directing a verdict for the amount of the $1000 note and interest, there should be a new trial; unless the plaintiffs will stipulate to remit the sum of $49.64, being the difference between the amount of the verdict and the sum they were entitled to recover, according to the foregoing views; in which case a new trial should be denied, and the verdict thus modified should be allowed to stand.

Ordered accordingly.

[CAYUGA GENERAL TERM, June 5, 1854. *Johnson, T. R. Strong* and *Welles*, Justices.]