## ROBERT HOWLAND v. ROBERT ADRAIN.

1. A notice of protest should sufficiently describe a note to apprize the party to whom the notice is sent what note is meant. If he is not misled by it, but understands what note is referred to, it is sufficient. Although it may not give all the essential parts of the note, or may describe it in some respects inaccurately, the description must be so full and true as to identify it. To render a variance fatal, it must be such that, under the circumstances of the case, the notice conveys to the endorser no sufficient knowledge of the note which has been dishonored. No precise form of words is necessary in such a notice, but the language must be such as to convey notice of what the bill or note is, and that payment of it has been refused.

2. Each party has a day for giving notice, that is the whole day on which he receives notice, to prepare his notice to the party liable to him. He must put it in the office in time to go by the mail of the next day closing after business hours commenced, if there be such mail. The party sending the notice must mail it on the next day after he receives it, although the party from whom he has received notice has not taken all the time the law allowed him for giving the notice. He cannot avail himself of the extra diligence of subsequent endorsers as an excuse for his own delay.

3. What is reasonable diligence in endeavoring to ascertain the residence of the endorser must depend upon the circumstances of each case. What would be sufficient in one case, would fall far short in another.

4. If the notice is sent by the mail of the next day after ascertaining the residence, when due diligence has been used, that will be sufficient.

In case. Case certified from the Middlesex Circuit. The facts appear sufficiently in the opinion of the court.

Argued at February term, 1862, before WHELPLEY, Chief Justice, and Justices ELMER and VAN DYKE.

For the plaintiff, *J. P. Bradley.*

For the defendant, *Robert Adrain.*

CHIEF JUSTICE.   This is an action against the defendant, as endorser of a promissory note, made by S. B. Driggs, payable to the order of the defendant, for $500, due on the 4th September, 1860, and endorsed by defendant for the accommodation of Driggs.   The note was deposited by the plaintiff, through his attorney in fact, F. H. Wolcott, in the Bank of New York for collection.   Driggs, the maker, had a place of business in New York, where, when the note became due, demand of payment was made by the notary of the bank, the holders thereof.   The case is before us, on the certificate of the judge who tried the cause, upon the point, whether notice of nonpayment was given, as required by law.

The note bears date in New York.   The defendant, when the note was made and became due, resided in New Brunswick, in this state.

Two points were made on the argument by the defendant.

1st. That there was no notice of nonpayment given to him in time.

2d. That the notice relied upon, if in time, was not sufficient.   Wolcott, the attorney of the plaintiff, who was the next endorser after the defendant, had a place of business in New York, but resided at Newtown, Long Island.   The notary made no inquiry for Adrain, but not finding his name in the directory, mailed the notice for Adrain in an envelope addressed to Robt. Howland, care of F. H. Wolcott, 88 Wall street, New York, and it was put in the mail on the morning of the 5th of September.   This was received by Mr. Wolcott, at Newtown, on the evening of the same day.   On the morning of the same day, he called at the Bank of New York, and was there informed that the note had been protested, and took the note and left it with his attorney, Mr. Jackson, with instructions to commence proceedings immediately.   He made no inquiry for the residence of Adrain.

He says Driggs did inform him that defendant was a lawyer, and resided in New Jersey, but does not recollect that he gave him his post-office address. On the 6th, he left the notice he received at Newtown on the table of Mr. Jackson, but did not see him.

Mr. Jackson says, that on the 5th, he prepared a summons and complaint to serve on Adrain in New York, but could not find his name in any of the directories he consulted; that he made no inquiries on the 5th for Adrain, but on the morning of the 6th, it occurred to him that the defendant might reside in New Jersey; that he then went to the office of the New Jersey Railroad Company, in the Exchange, and inquired for him, but got no information; that he then went to the law office of Hardenburgh & Rutgers, who were residents of New Jersey, but they were not found, and about four o'clock he went to Driggs' office, and thus, about half past four or five o'clock, learned that the defendant resided in New Brunswick.

At half past nine, on the morning of the seventh, he mailed the following letter to the defendant in time for the mail that went at four o'clock P. M.

"48 WALL STREET, NEW YORK CITY,
Sept. 7, 1860.

*Robert Adrain, esq.*

Dear sir,—Day before yesterday, F. H. Wolcott, esq., the attorney of R. S. Howland, esq., placed in my hands a note for collection, the note being for $500, and payable to your order September 1, 1860. That note has been protested at the Bank of New York, and notice thereof sent, of course, to you and to Mr. Howland. As I am instructed to collect the amount at once, I write to inquire if you are disposed to pay the note, with the usual costs of protesting and collection, together with interest, and thus render any further proceeding unnecessary, &c., &c.

(Signed)          Jos. C. Jackson,
          *Att'y of Robt. Howland.*"

In his reply, dated the 8th, to this letter of Mr. Jackson, the defendant says : I certainly presumed that the note referred to had been paid, as I had no notice of protest, nor was any sent to me at this place. Mr. Driggs is absent for a day or two, &c., &c., &c.

A notice should sufficiently describe a note, to apprize the party to whom it is sent what note is meant. If he is not misled by it, but understands what note is referred to, it is sufficient. Although it may not give all the essential parts of the note, or may describe it in some respects inaccurately, the description must be so full and true as to identify it.

To render a variance fatal, it must be such that, under the circumstances of the case, the notice conveys to the endorser no sufficient knowledge of the note which has been dishonored. No precise form of words is necessary in such a notice, but the language must be such as to convey notice of what the bill or note is, and that payment of it has been refused. *Hartley* v. *Case*, 4 *B. & C.* 339 ; *Reeddy* v. *Seixas*, 2 *Johns. Ca.* 337 ; *Mills* v. *Bank U. S.*, 11 *Wheat.* 431 ; *Cayuga Bank* v. *Worden*, 1 *Comstock* 417.

Extraneous circumstances may be shown to prove that the notice could not have misled the endorser, as that there was but one note of that date of that amount. Any evidence showing that the endorser was in fact notified of the dishonor of that note is admissible. *McKnight* v. *Lewis*, 5 *Barb.* 681 ; *Cayuga Bank* v. *Worden*, 2 *Selden* 19.

It is manifest that the defendant was not misled by the letter of Jackson ; it is not pretended that there was any other note of that description upon which he was endorser, save that of which Driggs was the maker. *Kilgore* v. *Bulkley*, 14 *Conn.* 362.

If the notice did its office, it was surely sufficient.

The sufficiency of the notice is to be decided by the laws of New York. *Aymar* v. *Sheldon*, 12 *Wend.* 439 ; *Carroll* v. *Upton*, 3 *Comstock* 272 ; *S. C.*, 2 *Sand. Sup. Ct.* 172.

The two most recent cases in New York are *The Home Insurance Company* v. *Green*, 19 *N. Y.*, 5 *Smith* 519, and

*Hodges* v. *Shuler*, 22 *New York*, 8 *Smith* 118. In the former case, the notice omitted the name of the maker of the note, but was correct in other respects. It was shown that, about the time of delivering the notice to the defendant, the same notary served a number of other notices of protest upon him. There was no evidence to show whether the defendant had been misled or not. The Court of Appeals held the notice insufficient.

In *Hodges* v. *Shuler*, the same court held a notice good, although it did not truly give the name of the maker, describing him as S. Henshaw, treasurer, without stating of what company, the note being that of the company. The court held it good because the defendant was contractor with the company, and the note had been given to him in payment by the company, and he must therefore have known who the maker was; in fact the extraneous evidence clearly showed that the defendant had not been misled by the defective notice, and that evidence for this purpose was admissible.

This case is distinguishable from that of *The Home Insurance Company* v. *Green*, on the ground that the proof showed that defendant knew what note was intended with reasonable certainty. Indeed that case seems hardly reconcilable with the current of authorities, or even with the cases cited by the court in its support. Perhaps it may be supported upon the ground that a mistake in the name, or the omission of it altogether, should be held fatal, inasmuch as the object of the notice is to enable the endorser to look after the maker immediately and secure himself.

It has always been held that it is for the defendant to show the existence of other notes to which the notice might apply. 7 *Mees. & Wels.* 436; *S. C.*, 8 *Ib.* 252; *Stockman* v. *Parr*, 11 *Mees. & Wels.* 810; and all the cases proceed upon the ground that the notice is given to one who either has, or ought to have a knowledge of the notes he has endorsed. The court, in the case in 5 *Smith*, puts itself upon the ground that the notice is to be full, so as to aid a defec-

tive memory. In that respect I think it a departure from the rule established in other cases, and ought not to be followed.

The remaining question is, was the notice sent in time? The Bank of New York was the holder of the note, and through its notary gave notice to the plaintiff on the 5th September, by whom it was received on the same day; in addition he had notice early on the morning of the same day from the bank, and took the note into his custody. The bank, for the purpose of giving notice, is to be considered a distinct holder, although it held the note only for collection, and has a day to give notice to its customer. *Robson* v. *Bennett*, 2 *Taunton* 388; *Langdale* v. *Trimmer*, 15 *East* 291; *Howard* v. *Ives*, 1 *Hill* 263; *Bank of U. S.* v. *Davis*, 2 *Hill* 451; *Haynes* v. *Birks*, 3 *Bos. & Pul.* 599; *Story on Prom. Notes*, § 326.

Each party has a day for giving notice, that is the whole day on which he receives notice, to prepare his notice to the party liable to him. He must put it in the office in time to go by the mail of the next day closing after business hours commence, if there be such mail. *Howard* v. *Ives*, 1 *Hill* 263; *Story on Prom. Notes*, § 327; *Sussex Bank* v. *Baldwin*, 2 *Harr.* 487; *Burgess* v. *Vreeland*, 4 *Zab.* 71; *Edwards on Bills* 617, and cases there cited, *note* 4.

The party sending the notice must mail it on the next day after he receives it, although the party from whom he has received notice has not taken all the time the law allowed him for giving the notice. He cannot avail himself of the extra diligence of subsequent endorsers as an excuse for his own delay. *Turner* v. *Leech*, 4 *B. & Ald.* 451; *Harrison* v. *Ruscoe*, 15 *Mees. & Wels.* 251; *Story on Prom. Notes*, § 332.

As has already been stated, both the bank and the plaintiff had notice at an early hour on the 5th September, and the plaintiff, on the morning of the 5th, left the note with his attorney to be proceeded on. Neither the plaintiff's agent, Wolcott, or the attorney made any inquiry to ascertain the residence of the defendant on the 5th, although it must

have been known to Wolcott that the drawer had a place of business in the city, where the inquiry could have been made with every probability of success. Wolcott knew that the note was endorsed by defendant for the accommodation of Driggs, and had been told by him that he resided in New Jersey. He gave no such information to the attorney, but suffered him to grope his way in the dark, when he might have enlightened him in a moment. The attorney spent the 5th September in drawing papers for a suit against defendant in New York, when Wolcott well knew he resided in New Jersey. No inquiry was made on that day. On the 6th, the attorney began his inquiries, it occurring to him that he might live in this state; but he made no inquiry of the maker, or at his place of business, until late in the afternoon of that day, when he immediately got the information, and sent his letter in time for the mail of the next day, the 8th September.

Wolcott, the holder of the note, who had control of it, and Jackson, his attorney, were guilty of *laches:* neither of them used due diligence to ascertain the residence of the defendant. It is perfectly evident that if they had done what they ought to have done—availed themselves of the means in their reach—they would have discovered the residence of defendant on the 5th September, so as to send notice to him on the 6th.

What is reasonable diligence in endeavoring to ascertain the residence of the endorser, must depend upon the circumstances of each case. What would be sufficient in one, would fall far short in another. *Story on Prom. Notes*, § 335.

If the notice is sent by the mail of the next day after ascertaining the residence, when due diligence has been used, that will be sufficient.

In *Rawdon* v. *Redfield*, 2 *Sand. Sup. Ct. Rep.* 178, Casey, Chief Justice, states the rule to be, "that if the notary inquire of persons who, from their connection with the transaction are likely to know the residence of the endorser, and are not interested to mislead the notary, and he acts on

information thus obtained, it is due diligence on his part. Where the inquiry cannot be made of any of the parties, the notary should go among the business men of the place, and make a thorough inquiry at places of public resort, and among such persons as would be likely to know the residence of the endorser." *Spencer* v. *Bank of Salina*, 3 *Hill* 520.

The party should seek the best information in his power, and not resort to inferior sources before exhausting the superior.

The letter of Jackson was never intended as a notice of protest—that is apparent, from its tenor. It states that a notice of protest had been sent to him : it was a mere dun letter, but nevertheless, if it was sufficient as such, and in due time, that can make no difference. This fact is noticed as accounting for the evident want of diligence of Jackson, the attorney—he only desired to apprize defendant that the note must be paid, or he would be sued.

I think that, owing to want of diligence in ascertaining the residence of defendant, the notice was one day too late. It should have been mailed on the 6th September.

There can be no doubt that the demand of payment was properly made.

The court had a right to infer, from the evidence, that the letter was put in the post-office on the 7th. Whether it was put in the mail on the 7th or 8th can make no difference—that was no fault of the holder. *Story on Prom. Notes*, § 328.

The postmark is at best but *prima facie* evidence that it was not put in the mail bag until the 8th, not that it was not put in the office until that day.

Circuit Court advised to give judgment for the defendant.

ELMER, J. The defendant, who resides at New Brunswick, in this state, was sued as the endorser of a promissory note for $500, drawn by S. B. Driggs, dated at New York, payable September 1st, 1860. The note was

placed, by the agent of the plaintiff, in the Bank of New York for collection. Not being paid at maturity, the notary demanded payment at the office of the maker, on the 4th of September, but not finding the endorser's name in the directory, made no inquiry for him ; but on the 5th, put notices of protest for the plaintiff and defendant into the post-office, directed to the plaintiff's agent, who received them the same day. The agent, happening to call at the bank on the 5th, was informed of the protest, and took the note and protest to Mr. Jackson, his attorney, with directions to collect it. The notary's notice to the defendant was not left with the attorney until the 6th, and was not sent to the defendant until the 10th or 11th. The plaintiff's agent testified that he did not know the defendant's address, but he had been informed, by Mr. Driggs, that he was a lawyer, and resided in New Jersey. This information, however, was not communicated to Mr. Jackson, who stated that he did not know the residence of the defendant; but supposing him to reside in New York, prepared a summons, which, in consequence of his name not being found in the directory, was not used. On the 6th it occurred to him that he might reside in New Jersey, and on the morning of that day he made some inquiries without success, and about four o'clock of that day he went to the office of Driggs, and was there informed of the proper address. No notice, however was sent on that day, the mail for New Brunswick closing at half-past four in the afternoon, and also at five in the morning. On the 7th, Mr. Jackson addressed a letter to the defendant, which he says he put in the mail on that day about half-past nine o'clock. Upon being produced, the letter bears the postmark of the 8th, and it is testified by the defendant that he did not receive it until the 8th. The postmaster of New Brunswick also stated circumstances tending to show it was not mailed until the 8th. But the judge, who by consent tried the cause without a jury, found, as matter of fact, that the letter was mailed on the 7th, about nine and a half o'clock A. M., in time for the afternoon mail, and I am ópinion that there is nothing in

the case which will justify us in holding that this finding ought to be set aside as contrary to the evidence.

The letter sent states that he had received for collection a note for $500, payable to defendant's order September 1st, 1860, which had been protested, and notice sent to defendant, and inquiring if he would pay the amount, with the costs of protest and interest, and thus render further proceedings unnecessary. To this the defendant immediately answered, saying: " I certainly presumed that the note referred to had been paid, as I received no notice of protest, nor was any sent to me at this place. Mr. Driggs is absent for a day or two ; as soon as he returns I will at once give you the answer requested." The defendant testified, " when I received the notice, I supposed that the note referred to was the note of Mr. Driggs now in suit, but was not certain of it. I now know that there was no other note of his for $500 which fell due at that time, but I did not know so then."

Two questions were discussed upon the argument upon which it is proper to express our opinion. First, was the notice mailed by Mr. Jackson, on the 7th, in time? The holder of the note, through his agent, having received notice of the protest on the 5th, was bound to send notice thereof to the defendant by the mail which closed after the commencement of business hours on the next day. Being ignorant of the defendant's address, that fact will excuse delay so long as that ignorance continues without his neglecting to use the ordinary means for acquiring information. *Woodruff* v. *Daggett, Spencer* 526 ; *Byles on Bills,* by *Sharswood,* 345, and cases cited. The maker of the note, it appears, had an office in the city, where, during his temporary absence, it was duly presented by the notary, and which Mr. Jackson could have easily found during the business hours of the 5th, and which he no doubt would have found had he been aware that notice of protest had not been forwarded to the defendant. To this place he went, after it was too late to send the notice by the mail of the 6th, and here he was

at once informed of the defendant's address. It was the natural and proper place at which inquiry should have been at once made. To sanction the neglect to do this would be equivalent to holding that no diligence at all was necessary. The plaintiff's agent had been informed that his residence was in New Jersey; and had this information been communicated to Mr. Jackson, he would have known at once that something more was necessary than to look into the directory. I am therefore of opinion that notice was not sent in due time, and that it must be certified to the Circuit Court that notice of the nonpayment of the note was not given to the endorser, as required by law, to charge him with the payment.

The other question discussed was, whether, supposing the notice to have been sent in due time, was it sufficient?

At one time the English courts seemed disposed to hold that a notice must be sufficient to inform the party, either in express terms or by necessary implication, that the bill or note had been dishonored, and that he was looked to for payment. *Hartley* v. *Case*, 4 *B. & C.* 339; *Solarte* v. *Palmer*, 7 *Bing.* 530; 1 *Bing. N. C.* 194. And had Mr. Jackson's letter stood alone, without other evidence it would have been insufficient. *Home Ins. Co.* v. *Green*, 19 *N. Y.* (5 *Smith*) 519. But it seems now to be the decided weight of authority, both in England and America, and I think it is the true principle, that as the notice may be verbal or written, and no particular form is necessary, if it appears to the satisfaction of the court and jury that the party to be charged was in fact apprized by the notice of the dishonor of the note in question, and that he was expected to pay it, the notice will be sufficient, and an omission or misdescription which did not mislead him will be immaterial. *Burgess* v. *Vreeland*, 4 *Zab.* 71; *Mills* v. *Bank of U. S.*, 1 *Wheat.* 425; *Rochester Bank* v. *Gould*, 9 *Wend.* 279; *Beals* v. *Peck*, 12 *Barb.* 250; *Youngs* v. *Lee*, 2 *Kern.* 554; *Cayuga Bank* v. *Worden*, 2 *Seld.* 26; *Snow* v. *Curtis*, 2 *Mich.* 238; *Stratton* v. *Breath*,

7 *Mees. & Wels.* 436 ; *Smith* v. *Boulton,* 1 *Hart & Walm.* 3 ; *Mellersh* v. *Rippen,* 11 *Eng. L. and E. R.* 599.

Had the notice stated who was the maker of the note, it would have been good of itself. The letter written by the defendant, on receiving it, shows that he knew this. He had endorsed no other note of that amount and date for Driggs or any other person. Upon the whole case, I think the court sitting for the jury would have been warranted in holding that the defendant was in fact apprized of the dishonor of the note in question, and was not misled by the omission to state the maker's name. It is true, as argued by the defendant, that proof of his being fully aware that this note was not paid, and had been protested, would not have been sufficient to charge him. He is entitled to express notice of this fact, and that he is looked to for payment, and this notice must come from some one interested in the note. But this is because, without such a notice, he has a right to infer that the holder is content to hold the maker, without having recourse to a mere surety. If he receives a notice in due time that a note he has endorsed is protested, he is at once put on his guard, and if reasonable means of knowing what note it is are afforded him, can at once take whatever steps he deems necessary for his own indemnity. It might have been better, perhaps, to have required a precise written notice, accurately describing the note, and expressly informing the endorser that he was looked to ; but mercantile usage, by which the courts have been guided, has not exacted this strictness, and it is too late now to require more than sufficient reasonably to notify him that he must take care of himself.

The Circuit Court is advised to give judgment for the defendant.

CITED in *Haines* v. *Dubois, infra* 261.