Jaccard et als. v. Anderson.

EUGENE JACCARD, AUGUSTUS MERMOD, AND D. CONSTANT JAC-
CARD, Respondents, *v.* WILLIAM C. ANDERSON, Appellant.

37 91
96 407

37 91
47a 154

37 91
54a 557

37 91
87a 117

1. *Note — Waiver of Demand and Protest.* — A waiver of presentment and de-
mand of payment of a negotiable note would imply and include a waiver of
protest and of notice of non-payment, but a waiver of notice only would not
be a waiver of demand. A "waiver of protest" would imply a waiver of
presentment, demand, and notice. The waiver is a matter between the
holder of the note and the endorser to be charged, and the agreement must
be made between them.
2. *Evidence—Hearsay.*—The testimony of a deceased witness at a former trial
of a case is admissible in evidence if the same issues are presented, and his
testimony was directed to the issues, thus giving an opportunity for cross-
examination.
3. *Practice—Instructions.*—Where all the facts in evidence do not prove, nor
tend to prove, the issue, it is the duty of the court so to instruct the jury as
a matter of law.

*Appeal from St. Louis Court of Common Pleas.*

*H. S. Lipscomb* with *A. M. Gardner*, and *Lackland, Cline
& Jamison*, for appellant.

I. An issue in pleading can be made only by the averment
of a fact by the plaintiff and the denial thereof by the defend-
ant. The testimony of witness King must have been taken
on an issue thus formed, to be admissible after his death on
the second trial below. The words "that said note was not
protested at defendant's instance and request, he waiving
protest," do not constitute an averment of demand or ex-
cuse for failure to demand payment of the maker. (32 Mo.
188, this case.) There was then, on the first trial of this
cause, no averment of demand or excuse for failure to de-
mand payment of the maker. Before the second trial below,
King (the witness) died. What he said in the first trial on
this issue, not then made by the pleadings, was erroneously
admitted on the second trial. (Melvin v. Whitney, 7 Pick.
79; Bull, N. P., 242; Arnold v. Arnold, 17 Pick. 7; 1 Phil.
Ev. 393, n.; 1 Greenl. Ev. 528.)

II. To constitute a waiver of demand and notice, there
must be an agreement between plaintiffs and defendant.

What defendant may have said to a third party, not the agent of plaintiffs, is no waiver. (Chit. Bills, 565.) The waiver claimed must be the clear import of the words used by the defendant, and those words should have been spoken to plaintiffs or their agent. (Sto. Bills, 320 ; Lane v. Savrart, 2 Appleton, 98 ; 4 Mass. 347 ; 17 Pick. 335 ; 11 Wend. 634.)

If the evidence of witness King is to be considered, he distinctly states that defendant did not waive demand and notice.

*Garesché* and *Mead*, for respondents.

I. King's testimony was properly read. (Greenl. Ev. § 167 & 163.)

II. The waiver of protest need not be in writing. (Sto. Prom. N. § 279.)

III. The court in its refusal and grant of instructions committed no error for which the court will reverse. Those asked by the defendant were either embodied in those given by the court, or are based upon a hypothesis of fact negatived by the decision. That the court did not err where the instructions refused are embodied in others given ; that there is no error, see Williams v. Van Meter, 8 Mo. 339 ; Master v. Fanning, 9 Mo. 314 ; Patterson v. McClannahan, 13 Mo. 510 ; Hurst v. Salomon, 13 Mo. 82 ; Darby v. Charless, 13 Mo. 465 ; Huntsman v. Rutherford, 13 Mo. 465 ; Pond v. Wyman, 15 Mo. 181 ; Gamache v. Piquinot, 7 Mo. 325 ; Young v. White, 18 Mo. 98 ; Carroll v. Paul's Exec'r, 19 Mo. 103.

Where instructions are negative to or unsupported by the facts they should be refused. (Patterson v. McClannahan, 13 Mo. 507 ; Hasse v. Lemp, 26 Mo. 894 ; Rogers v. McCune, 19 Mo. 568–9 ; Harrison v. Cachelin, 27 Mo. 26.)

IV. The defendant is liable. Where the necessary steps to fix an endorser are prevented by some act of the latter which puts the holder off his guard, the holder is excused. And herein of King's visit to the plaintiff, at defendants' instance, to see if the holder would renew and save the note from dishonor. (Sto. Prom. N. §§ 271, 272 ; Sto. Bills Ex. § 317.)

In mercantile as well as legal language, the word "protest," used in connection with a promissory note endorsed as the defendant used it, is understood to mean the taking of such steps as by law are required to charge an endorser—that is, demand and notice. (Coddington v. Davis, 3 Den. 25; id. S. C. 610.)

Where the endorser of a note wrote, "you need not protest T. R. & Co.'s note," &c., and "I will waive the necessity of protest thereof," held sufficient as a valid waiver of demand and notice. (Cook v. Litchfield, 5 Sanf., N. Y. 341; 10 Barr. Penn. 103; Bruce v. Little, 13 Barb. 167; Spencer v. Harvey, 17 Wend. 491; Gilbert v. Davis, 3 Metc. '496–7; Glasgow v. Pratte, 8 Mo. 336; Day v. Ridgway et al. 17 Penn. 30; Boyd v. Cleveland, 4 Pick. 526; Sigerson v. Matthews, 20 How. 499; Nowell v. Nowell, 8 Me. 220; Dankwater v. Libbetts, 17 Me. 16; Amoskeag Bk. v. Moore, 37 N. H. 543; Russell v. Conkhite, 32 Barb., N. Y. 282.)

V. The foregoing decisions prove that what amounts to a waiver is a question of fact, not of law; and on this, see Union Bk. v. Magruder, 7 Pet. 290. If, therefore, this be a question of fact, there is nothing in the record to justify the reversal of the judgment, as this court never reviews the facts to see if they justify the verdict. (Papin v. Allen, 33 Mo. 260; McCullough v. McCullough, 31 Mo. 226.)

It is also submitted on the above authorities, that it is certain that a holder, at the instance of the endorser, on the day of the maturity of a note, authorized to make arrangements to save it from dishonor and to renew it if possible, approaches the holder and persuades him that if the note be withdrawn, and not protested, the endorser and himself will arrange for its payment, is first a waiver of demand and notice, and as such binds the endorser.

HOLMES, Judge, delivered the opinion of the court.

On a former occasion this case was reversed in this court, upon a defective petition, and was remanded with leave to amend. It then contained an averment that " at defendant's

7—VOL. XXXVII.

instance and request the note was not protested, he waiving protest." On the question whether this was in law a waiver of demand, the court expressed no opinion; but it was said that the question of pleading was distinct from the question of the effect of evidence bearing upon a waiver of protest, and that there must be an averment of a demand, or of facts which could excuse or be equivalent to it, in order to show the defendant's liability. The case now comes up again, after another trial in the court below upon an amended petition. The averment is that "at maturity of said note, to-wit, on the 19th of April, 1857, payment was not demanded, notice given, or the note protested; defendant waived a demand on Washington King, the maker of said note, for the payment thereof, and also notice to him, said defendant, of said demand and non-payment thereof." It is not expressly stated here that the waiver was made to the holders of the note, or by an agreement of the defendant with them; but inasmuch as nothing less than something of that kind could amount to a waiver of demand and notice, we are inclined to think the averment that the defendant "waived a demand," may be understood as sufficiently alleging that such waiver was made in some manner or by some agreement between the defendant and the holders of the note, and that evidence of such an agreement or waiver would be admissible under that averment. A waiver of demand would imply and include a waiver of protest and notice, but a waiver of notice only would not be a waiver of demand also. (Barker v. Shepard, 11 Wend. 629.) There is no absolute necessity for a protest of a note or an inland bill of exchange (Sto. Notes, § 297); but as to a *protest* in such cases, the better opinion would seem to be that an agreement for a waiver of protest alone would fairly imply and import a waiver of demand and notice. (Coddington v. Davis, 3 Den. 16; 1 Pars. Bills, 471, 579.)

On the last trial the plaintiff offered to read in evidence the testimony of Washington King, the maker of the note, as preserved in the bill of exceptions, which was filed on the former trial of the cause (it being admitted that the witness

was since deceased) ; to the admission of which the defendant excepted, for the reasons that, first, the issues now made by the amended pleadings were different from what they were at the former trial; and, second, that the testimony offered did not even purport to be all the witness stated on the former trial. There is no objection to the competency of this kind of evidence when proved to be the substance of the testimony which the deceased witness gave on the former occasion. Nor was it objected that the testimony contained in the bill of exceptions was not proved by a witness to be the testimony, or the substance of the testimony, which was given on the former trial. These objections appear to have been waived; at any rate, no objection appearing to have been made, and no exception having been taken on these grounds, they will be taken here as having been waived. We have only to consider, then, whether the objections which were made were well taken. And first, as to the issues being the same. As we have seen, the averment of the former petition amounted to a substantial allegation of a waiver of a demand and notice, and such waiver was one of the issues of fact on the former trial. The testimony of King appears to have been directed to this issue. The averment of this petition, though made in different words, amounted essentially to the same thing. It raises an issue of fact upon the question of a waiver of a demand and notice.

An issue upon a common or free fishery in one case, and upon a several fishery in another, and an issue upon the stealing of a buggy and upon the stealing of a mule, has been held to be different. (Melvin v. Whiting, 7 Pick. 79; Davis v. Steele, 17 Ala. 354.) The principle upon which the distinction turns is the right of cross-examination, and where the issues are so nearly the same that it is apparent that there was an opportunity to cross-examine the witness as to the same matter in both cases, the issue will be considered as sufficiently identical. (1 Greenl. Ev. § 164.) We think the issues here were substantially the same.

As to the other objection, it is sufficient if the statement

embrace the whole substance of what was said on the particular subject which the witness was called to prove; they need not contain what was said upon other subjects or upon other issues in the cause. The rule has reference, again, to the right of cross-examination, and it requires that the substance of all that was said upon the particular subject, both on the examination in chief and on cross-examination, should be stated. (1 Greenl. Ev. § 165; Davis v. State, 17 Ala. 354.) Justice to both parties would seem to require this much. It is to be presumed that the bill of exceptions contained all the testimony of the witness in chief and on cross-examination which the parties or their counsel deemed material to the issue, or necessary to be saved in a bill of exceptions. On the face of the testimony offered it appears to have been all that was given or deemed important on the former trial; and it does not appear by the bill of exceptions taken in this last trial that any part of the testimony was omitted before. One of the defendant's counsel testified that he assisted in preparing the former bill of exceptions, and that he " thought it contained in substance the testimony of King at the trial, though not all he may have said." We think it sufficiently appears that the substance of the whole testimony was contained in the bill of exceptions that was offered in evidence.

The main questions involved in the instructions are : first, on the part of the defendant, whether there was any evidence which was competent to go to the jury on the issue made upon a waiver of demand and notice; and second, on the part of the plaintiffs, whether the first and third instructions which were given for the plaintiffs were correctly given, to the effect that if the defendant, upon being advised by the maker of his inability to meet the note at maturity, authorized him to make his agreement with the holders to save it from protest, and that the plaintiffs- upon being asked not to protest it, and assured that as soon as the defendant returned he would arrange the note, relying upon such assurance, omitted to make demand and give notice ; or if the maker, at the instance and request

of the defendant, thus knowing the note would not be paid at maturity, and, for the purpose of saving it from being dishonored, called upon the plaintiffs, the holders, and prevailed upon them not to have the note protested, and assured them that the note would be settled by giving a new note in renewal or otherwise, and the plaintiffs, acting upon such assurance, failed to make demand and give notice, then, in either case, these facts amounted to a waiver, or to evidence of a waiver of demand and notice.

The testimony of King, the maker, was the only evidence that was offered as affirmatively tending in any way to establish the facts in issue. It is here set forth in full as follows: " Defendant waived the protest and notice, but thought it could only be done in writing; that, some days before the note sued on became due, he saw the defendant and told him he could not pay it. Defendant said he could not pay it either. Defendant asked who held the note, and said that an effort might be made to renew it. On the morning of the day the note fell due, after a good deal of inquiry, I found it at the banking-house of Lucas & Simonds, where it had been deposited for collection, and there learned that it belonged to the plaintiffs. I was authorized by defendant to make arrangements to save the note from protest, and the necessity of giving notice before defendant started up the river. This was on Saturday morning; on the Wednesday previous, the defendant told me he was going to Palmyra, to be absent until the Monday following. I remarked 'the note will go to protest, which you are desirous not to have done. Could you not get back by Saturday?' He said he would try, and asked me to try and find the note. He did not get back until the Monday or Tuesday of the next week. On Saturday, after I found the note at Lucas & Simonds', and learned that it belonged to Jaccard & Co., I called at their store. Mr. Jaccard said he did not know Mr. Anderson, but knew me. I told him Mr. Anderson would waive the protest on his return and we could arrange about the note afterwards. After Anderson returned, on Monday or Tuesday, I saw him and asked him

to go to Jaccard's and waive the protest. He said he had no time to go. I then asked him if he would go the next day. He said he would try. On the next day he said he could not go, as he wanted to show Belcher some coal lands in Illinois. On the next day after that I saw him again, and he refused to go altogether and waive the protest. On the Wednesday before he left for Palmyra, Anderson said he would like to waive the protest, or arrange about it, but we did not know who held the note. I asked him to be back on Saturday, and waive the protest if nothing better could be done. He said he would try to do so. I never told Jaccard that Anderson had waived the protest of the note in question, or that he had authorized me to waive it for him, or that he would waive it; but that I believed he would waive the protest on his return, from the conversation I had with him. After Anderson returned he never said he would waive the protest of the note, or any of his rights, or that he had author-authorized any one to waive it for him."

Taking these statements altogether it is clear for one thing, that they do not show any conversation, negotiation, or agreement of any kind between the defendant and the holders of the note, directly or in person, but only between them and the maker. Whatever may have been the understanding between the maker and the defendant as to a waiver or a renewal, that alone could not affect the rights of the holders, nor excuse them from all diligence for the protection of their own interests. The waiver is a matter between the holder and the party who is to be charged with liability, and any agreement for a waiver of demand and notice must be made between them. There must be some special agreement between the holder and the particular endorser waiving due presentment, and no other party is bound by it. (Sto. Notes, § 271.) When such an agreement is made, it makes no difference whether or not there was any other valuable consideration for it than the detriment that might be occasioned to the holder in consequence of the fraud or breach of faith of the endorser, if he were not held to be bound by it; but there

must be some contract or privity between the parties otherwise it will be a transaction merely *inter alios acta.* (Sto. Notes, §§ 272, 293.) All the cases to which our attention has been called suppose some agreement for a waiver made with the holder, or that the holder is in some way a party or privy thereto. In Coddington v. Davis (3 Den. 16) the endorser wrote to the holder and said, "I will waive the necessity of protest thereof." The agreement binds only the parties to it, or those who have sanctioned it. (Sto. Notes, §§ 272, 291.) There was no such agreement in this case. The matter then is narrowed down to the simple question whether this testimony shows any authority from the defendant to the maker that would enable him as an agent to make such an agreement with the holders in his name, and whether such an agreement was in fact made by him in pursuance of that authority and as the agent of the defendant. The witness begins by saying that the defendant waived the protest and notice, but thought it could only be done in writing. He does not say to whom this waiver was made, but from what follows the inference must be that it was made to the witness only ; and it amounted to nothing more than an expression of a willingness to make a waiver, under the supposition, however, that it would have to be done in writing.

He says also that he was authorized by the defendant to make arrangements to save the note from protest and the necessity of giving notice. He does not say that he was authorized to make an agreement to that effect with the holders in the name of the defendant. According to the views above expressed, such an agreement would have amounted to a waiver of demand and notice.

The maker could have saved the note from protest by making arrangements to pay it, or to renew it by giving a new note with a new endorser instead of defendant, and it is by no means clear that such was not the full extent of the authority intended to be given. The witness uses language of his own and not that of the defendant, and taking all his statements together it is pretty evident that he did not him-

self understand that he had authority to make such an agreement with the holders; for he expressly says again that he never told the holders that the defendant had authorized him to make a waiver for him, or that he had waived a protest, or that he would waive it; and that the defendant, after his return, had never said he had authorized any one to make a waiver for him. Jaccard, when called on, said he did not know the defendant, but knew him, the maker; and he then told Jaccard that the defendant would waive the protest on his return, and they could arrange about the matter afterwards. From all these statements it would seem that the parties all supposed a waiver in writing or a renewal of the note would be necessary, and that the holders relied upon the assurance of the maker, whom they knew, that the defendant would make such waiver, or arrange for a renewal of the note after his return; and it is very plain that no agreement for a waiver was made with the holders by the maker, acting in the character of agent of the defendant, for that purpose. Nor does it appear that it was upon the footing of any such agreement that the holders were induced to forego the making of the necessary presentment and demand.

This view is entirely consistent with the statement of the witness for the defendant, that, as his counsel, some time previous to the former trial, he had called on King to know what he could state with regard to the matter, and that he then stated emphatically that the defendant never had waived the protest, nor agreed to do so, and that he had never told the plaintiffs that the defendant had waived protest on the note; but, from what defendant had said to him, he believed he would do so after his return to the city. The result is that there is no evidence whatever here that tended to show a clear and unequivocal agreement for a waiver of demand and notice between the endorser and the holders, either in person or by agent.

Agreements of this sort are to be construed strictly, and not extended beyond the fair import of what is said and done. (Sto. Notes, § 271.) The action of the defendant, at most,

presents a case of equivocal acts, language, and conduct, only, not amounting to anything definite and decisive. There is nothing in the evidence which amounts to any agreement on the part of the defendant with the holders, in person or by agent, expressed or implied, verbal or in writing, for a present actual waiver of demand and notice; and such an agreement ment cannot be inferred, in derogation of the admitted rights of the defendant, from any doubtful acts or equivocal circumstances. (Sto. Notes, §§ 287, 295 & 366-7 ; Sto. Bills, §§ 289 & 371 ; Gregory v. Allen, 1 Mar. & Yerg. 74 ; Thornton v. Wynn, 12 Wheat. 183.) Where there is any evidence which tends to prove a waiver of demand and notice, it is a question of fact for the jury to decide, and all the circumstances are to be taken into consideration in order to ascertain whether the promise does or does not amount to a waiver. (Union Bank v. Magruder, 7 Pet. 287; Russell v. Cronkhite, 32 Barb. 282 ; Sto. Notes, § 279.) But where there is no such evidence, or all the facts proved, if true, do not amount to a waiver, it is purely a question of law, and must be decided by the court. The jury is not to be allowed, by a verdict, upon any general impression or vague opinion of their own, which they may gather from any mass of facts and circumstances which do not amount in law to evidence, or proof of the main fact in issue, to take the property of one man and give it to another.

In Taunton Bk. v. Richardson (5 Pick. 436) the endorser promised the holder to take care of the note and attend to the renewal of it ; and this was held to be presumptive evidence of a waiver by him. In Boyd v. Cleveland (4 Pick. 525) the endorser promised that he would take up the note, if not paid by the other party ; and this was held to warrant a conclusion that there was a waiver. In Russell v. Cronkhite (32 Barb. 282) the endorser said to the holder, it is " all right ; the note is perfectly good; put yourself to no trouble"; and this was held to be sufficient evidence to go to the jury in the question of waiver. In Thornton v. Wynn (12 Wheat.

183) the defendant offered to take up the note if the plaintiff would give time, and receive other notes in payment; and this was held not to amount to a waiver of due presentment and demand, nor to any admission of the right of the holder to resort to him on the note without fixing his liability in the legal manner; and when the language or circumstances are of a more doubtful and uncertain character than in such instances as these, no such waiver will be inferred. (Sto. Notes, § 279; Prideaux v. Collier, 2 Stark. 57; Fuller v. McDonald, 8 Greenl. 213; Lane v. Steward, 2 App. 98.)

On all the facts appearing here, we think the holders were not justified in presuming that the endorser would waive any of his legal rights in the matter, or that if they ventured to rely upon the personal assurance of the maker, without any communication with the endorser himself, or any distinct agreement made by him, or by the maker as his authorized agent, they cannot complain and must bear the loss.

Our conclusion is, that the two instructions given for the the plaintiffs, though they may have been correct enough as general propositions of law, were erroneously given, as having no sufficient basis in the evidence before the jury, and that the fourth and fifth instructions which were refused for the defendant, to the effect that there was no sufficient evidence in the case to entitle the plaintiffs to recover, should have been given.

The judgment is reversed.   The other judges concur.