THE STATE v. ABLE, APPELLANT.

1. **Continuance**: DILIGENCE. A conviction in a capital case will not be reversed, because the trial court overruled a motion for a continuance made after the case had been pending for three years, and based on the absence of witnesses, unless it is shown that the defendant has used the utmost diligence to procure their testimony.

2. **Statute**: UNCONSTITUTIONALITY. The unconstitutionality of a statute must appear beyond a reasonable doubt, before the courts will pronounce it void.

3. **Special Judge.** The act of 1877 authorizing the trial of a criminal cause, pending in any circuit court, by a special judge selected by the attorneys of the court from their own number, when the judge of the court is of kin to the defendant, or is interested or prejudiced, or has been of counsel, or will not give defendant a fair trial, is constitutional. (Sess. Acts 1877, p. 357.)

4. **Testimony of Deceased Witness**: CRIMINAL PRACTICE. When it is shown that a person who testified on a former trial of a criminal case, has since died, his testimony then given may be proved and received in evidence. A witness called to prove what the testimony was, need not give the exact words of the deceased witness, but may give the substance of what he said.

5. ———: CASE ADJUDGED. It appearing on a second trial of a capital case that a witness who testified at the first trial, had since died, a bill of exceptions agreed to at that time both by the State's attorney and the counsel for the defendant, and signed by the judge who tried the case, was allowed to be read in evidence as the testimony of the deceased witness, proof having been made that it embodied the substance of his testimony, though it was not shown to be all he said, or in the very language that he used; and for the purpose of identifying the testimony a witness was allowed to look at the bill of exceptions, in order to refresh his memory as to the name of the deceased witness.

*Appeal from Jasper Circuit Court.*—The case was tried before SAMUEL G. WILLIAMS, ESQ., sitting as Special Judge.

*W. C. Robinson, T. B. Haughawout* and *Wm. H. Phelps* for appellant.

I. The constitution, Sec. 25 Art. 6, requiring that circuit judges shall be elected by the qualified voters of each circuit, the act of May 19, 1877, acts of 1877, page 357 in

so far as it authorizes the election of a special judge by the members of the bar is unconstitutional. *Winchester v. Ayres,* 4 Greene (Iowa) 104; *Van Slyke v. Trempealeau Co. Farmers Mut. Fire Ins. Co.,* 39 Wisc. 390; *Cohen v. Hoff,* 3 Brevard (S. C.) 500. Section 29 of article 6 of the constitution does not authorize the legislature to provide a different qualification or mode of electing circuit judges, and give it authority to change the manner or way of holding court by a constitutionally qualified and elected judge.

II. The State should have shown that the defendant was present at the time the deceased witness testified, all authorities agreeing that the accused must be present when the testimony is given. *State v. McO'Blenis,* 24 Mo. 402. The rule in civil cases that the testimony preserved in the bill of exceptions may be read on a subsequent trial has no application in a criminal case. *Kean v. Commonwealth,* 10 Bush (Ky.) 190. The witness had no right to refresh his memory by the bill of exceptions. 1 Greenleaf on Ev. 194. The objection that a proper foundation for the introduction of the bill of exceptions had not been laid was sufficient in a criminal case. *State v. O'Connor, (infra* p. 374). The court having permitted the bill of exceptions signed by bystanders to be filed, its truthfulness cannot be questioned. *Norton v. Dorsey (infra* p. 376).

*J. L. Smith,* Attorney General, for the State.

I. The first point relied on by appellant, is, that the act of May 19, 1877, is unconstitutional, and the solution of this question involves a construction of sections one and twenty-nine of article six of the Constitution of 1875. Section one provides that "the judicial power of the State as to matters of law and equity, *except as in this constitution otherwise provided,* shall be vested in a Supreme Court, &c., circuit courts, &c. Section twenty-nine provides that in certain cases, a judge of one circuit may call in the judge of another to hold a term or a part of a term of court for

him, and "in all such cases, *or in any case where the judge cannot preside, the General Assembly shall make such additional provision for holding court as may be found necessary.*" We think that section one vests the judicial power of this state in the various courts therein named, and such other person or persons as are provided by the General Assembly by virtue of any other provision of the constitution, and that consequently any act passed by the General Assembly by virtue of such other provision, cannot be said to be in conflict with section one. Section twenty-nine confers upon the General Assembly power to provide such laws for holding court as it may find necessary, "in any case where the judge cannot preside." The act of May 19, 1877, *supra*, in effect provides, that "when the judge of the court in which such case is pending, is near of kin to the defendant by blood or marriage, or when the offense charged is alleged to have been committed against the person or property of such judge, or some person near of kin to him, or when the judge is in anywise interested *or prejudiced*, or shall have been of counsel in the cause, or when the defendant shall make and file an affidavit, &c, that such judge will not afford him a fair trial," a special judge to try said cause shall be elected as therein provided, and is in effect a legislative finding, that these are cases "where the judge cannot preside," and that it was "necessary" to make this "additional provision for holding court." *Carpenter v. Montgomery*, 7 Blackf. 415; *People v. Smith*, 21 N. Y. 595.

II. The rule is well settled that "no court is authorized to declare an act of the Legislature void without being able to point out some specific clause in the constitution to which it is repugnant." *Hamilton v. St. Louis Co. Court*, 15 Mo. 20; *Stephens v. St. L. N. Bk.*, 43 Mo. 385; *State ex rel., &c., v. C. G. & S. L. R. R.*, 48 Mo. 468; *North Mo. R. R. v. Maguire*, 49 Mo. 490; *County Court, &c., v. Griswold*, 58 Mo. 175; *Sears v. Cottrell*, 5 Mich. 251.

III. The identity of the testimony of the deceased witness, Holliday, was sufficiently established, and the

evidence was admissible. The rules which govern civil cases as to receiving evidence of deceased witnesses, are also applicable to criminal cases. *State v. Baker*, 24 Mo. 437; *State v. Houser*, 26 Mo. 431; *State v. Harman*, 27 Mo. 120; *Summons v. State*, 5 Ohio St. 325; *Greenwood v. State*, 35 Texas 587; *Davis v. State*, 17 Ala. 354; *Morris v. Hammerle*, 40 Mo. 489; *Rhine v. Robinson*, 3 Casey 30; *P. & R. R. R. v. Spearen*, 47 Pa. St. 306; *Brown v. Commonwealth*, 73 Pa. St. 321; *Van Buren v. Cockburn*, 14 Barb. 118; *Adair v. Adair*, 39 Ga. 75; *People v. Murphy*, 45 Cal. 137; *Marsh v. Jones*, 21 Vt. 378; *Downer v. Rowell*, 24 Vt. 344; *Whitcher v. Morey*, 39 Vt. 459; 1 Whart. Crim. Law, p. 667. To establish a rule excluding evidence which comes before the court so fully verified as that offered in the present case, is to establish one " which the imperfection of our nature in the structure of the human memory will not warrant. It, in truth, excludes the thing which it proposes to admit, and at the same time opens a door for knaves to enter where honest men cannot approach."

NORTON, J.—The defendant was indicted in the circuit court of McDonald county at the June term, 1874, thereof for murder in the first degree in killing one John L. Lane. The venue of the cause on application of the defendant was by order of said court, made at its October term, 1874, changed to Jasper county, in which county defendant was put upon his trial at the September term, 1877, of the circuit court of said county, which resulted in his conviction of the crime charged in the indictment.

Before the trial defendant presented an application for continuance, which was by the court overruled, to which exception was taken.

He also presented his petition and affidavit for a change of venue upon the ground that the judge was so prejudiced against him that he could not obtain a fair trial. This application was adjudged sufficient, and thereupon the judge

made an order in pursuance of the act of 1877 for an election of a special judge to hear and try the cause. Sess. Acts 1877, p. 357. The election resulted in the choice of S. G. Williams, who presided in the cause, and conducted the trial of the same.

During the trial the court over the objection of defendant admitted the evidence of one William Holliday, given upon a former trial of this cause, as preserved in a bill of exceptions, to be read to the jury, the said Holliday in the meantime having died. The action of the court in overruling defendant's application for a continuance, in refusing to award a change of venue, and in ordering the election of a special judge to try the cause, and in admitting the evidence of the deceased Holliday, are the errors urged upon our attention by the counsel for defendant.

The affidavit of defendant fails to disclose due diligence in procuring the attendance or the evidence of the wit-

1. CONTINUANCE: Diligence. nesses, on whose absence he based his application for a continuance. He had no subpœna issued for one of them, and took no steps to take the deposition of the other, who resided in Vernon county. This cause has been pending since June, 1874, and in such cases the application for continuance should show the utmost degree of diligence before this court would be justified in interfering with the discretion of the trial court in overruling it. The affidavit not disclosing this degree of diligence, there was no error in refusing to grant the prayer of it, and requiring defendant to submit to a trial.

In support of the second ground of objection it is urged with much plausibility that the act of the legisla-

2. STATUTE: Unconstitutionality. ture authorizing the election of a special judge to try causes where the presiding judge of the court is disqualified by reasons therein named, is unconstitutional. It may be observed, as preliminary to the consideration of the subject, that when we are asked to declare an act of the legislature unconstitutional, which has been passed with all the forms and ceremonies

requisite to give it force, the question should be approached with great caution, and considered with the utmost care and deliberation. The nullity and invalidity of such a law must appear beyond a reasonable doubt before we can assume to pronounce it void. It has been held by this court " that no rule is better established than that acts of the Legislature are presumed to be constitutional until the contrary plainly appears, and it is only when they manifestly infringe on some provision of the constitution that they can be declared to be void for that reason. In cases of doubt every possible presumption, not directly and clearly inconsistent with the language and subject matter, is to be made in favor of the constitutionality of the act." (43 Mo. 385; 48 Mo. 468.) The solution of such a question as is here presented, ought not to be made by a resort to mere verbal criticisms, subtle distinctions, abstract reasoning, or nice differences in the meaning of words. It has been well said in case of *Brown v. Buzan* (24 Ind. 197), which involved a similar question upon a statute kindred to the one we are called upon to consider, "that the Legislature is peculiarly under the control of the popular will. It is liable to be changed at short intervals by elections. Its errors, therefore, can be quickly cured. The courts are more remote from the people. If we, by following our doubts in the absence of clear convictions, shall abridge the just authority of the legislature, there is no remedy for six years. Thus to whatever extent this court might err in denying the rightful authority of the law-making department, we would chain that authority for a long period at our feet. It is better and safer, therefore, that the judiciary, if err it must, should not err in that direction. If either department of the government may slightly overstep the limits of its constitutional powers, it should be that one whose official life would soonest end. It has the least motive to usurp power not given, and the people can sooner relieve themselves of its mistakes. Herein is a sufficient reason that

the courts should never strike down a statute unless its conflict with the constitution is clear. The judiciary ought to accord to the Legislature as much purity of purpose as it would claim for itself, as honest a desire to obey the constitution, and also a high capacity to judge of its meaning." Of course the constitution is above and paramount to all statutes, and where there is a manifest and clear conflict between the two, the former must prevail and the latter fall. These observations having been made to manifest the rule by which we shall be guided in reaching our conclusion we proceed to the consideration of the point raised.

The act, the constitutionality of which is called in question, (Session Acts 1877, p. 357,) provides as follows:

SEC. 1. Hereafter no change of venue shall be awarded in any indictment or criminal prosecution in any circuit 3. SPECIAL JUDGE. or criminal court in either of the following cases:

*First.* When the judge of the court, in which such case is pending, is near of kin to the defendant by blood or marriage.

*Second.* When the offense charged is alleged to have been committed against the personal property of said judge or some person near of kin to him.

*Third.* When the judge is anywise interested or prejudiced, or shall have been of counsel in the case; or,

*Fourth.* When the defendant shall make and file an affidavit, supported by the affidavit of at least two reputable persons, not of kin to or counsel of the applicant, that the judge of the court in which said cause is pending, will not afford him a fair trial, or will not impartially decide his application for a change of venue.

SEC. 2. Whenever in any cause an application shall be made for a change of venue for any one or more of the reasons above stated, it shall be lawful for such judge to hear such application, and immediately thereafter, by an order of record to empower the members of the bar pres-

ent, to the number of three, or more, duly enrolled and licensed attorneys of this State, to proceed to the election of a special judge for the trial of the particular cause pending. Such election shall be held by the clerk of the court, who, in case of a tie, shall give the deciding vote. Such special judge, immediately after his election, shall take an oath to support the constitution of the United States and the State of Missouri, and to hear and try the particular case pending, without fear, favor or partiality.    *    *    *    Provided that nothing in this act shall be so construed as to permit the election of any attorney for such special judge who is near of kin to the defendant or judge of said court by blood or marriage, or where the offense committed is alleged to have been committed against the person or property of said attorney, or some person near of kin to him, or where such attorney is in anywise interested or prejudiced or shall have been counsel in the cause.

The clause of the constitution which, it is claimed, gives warrant for the above enactment is as follows : (Sec. 29, Art. 6.) " If there be a vacancy in the office of judge of any circuit, or if the judge be sick, absent, or from any cause unable to hold any term or part of term of court in any county in his circuit, such term or part of term of court may be held by a judge of any other circuit, and at the request of the judge of any circuit, any term of court or part of term in his circuit, may be held by the judge of any other circuit, and in all such cases, or in any case where the judge cannot preside, the General Assembly shall make such additional provision for holding court as may be found necessary." Giving to this language its ordinary and usual signification, it can scarcely be doubted but that it confers ample power on the Legislature to pass such a law as is here called in question. In order that this may be made more manifest, we will consider the section as it stood in the constitution of 1865, and note the changes which have been made in it in our present organic

law.   The provision of the constitution of 1865, upon this subject, was as follows: "If there be a vacancy in the office of judge of any circuit, or if he be sick, absent, or from any cause unable to hold any term of court of any county of his circuit, such term of court may be held by a judge of any other circuit, and at the request of the judge of any circuit, any term of court in his circuit may be held by the judge of any other circuit."   The section is materially different from the section upon the same subject incorporated in our present constitution, which has been copied herein.   Under the provision made in the constitution of 1865, it has been held by this court that the circuit judge of one circuit, while he might hold a term of court in another circuit, where any of the contingencies mentioned in the section happened, could not hold a part of the term.   Hence, the words " or part of a term " were added to the section in our present constitution.   There was also added to the section the following: " And in all such cases, or in any case where the judge cannot preside, the General Assembly shall make such additional provision for holding court as may be necessary."   It had been held in the case of *Harper v. Jacobs*, 51 Mo. 296, that while an act of the Legislature creating the court of common pleas of Jasper county, and authorizing the judge of said court to appoint a judge *pro tempore* when an application for change of venue should be made because of the prejudice or interest of the judge was constitutional, yet the Legislature had no power to authorize the appointment of an attorney to sit in the trial of a particular case in the circuit court.   This decision was before the convention which framed the present constitution, and before the people of the State, who adopted it, and furnishes a reason for the additional clause to the section conferring the power, in words hampered by no limitations, upon the Legislature to provide for holding circuit court in any case when the judge could not preside.

It may be further said that the framers of the consti-

tution and the people, looking to the fact that when a personal objection to the judge existed, founded either on his interest or his prejudice, a change of venue to another circuit on that account, not only was often attended with great expense and inconvenience to the people and litigants, but greatly impeded the administration of justice, and in many cases amounted to a denial of it, believed it was wise to invest the Legislature with the power to make such provisions as they might deem just to cure what was believed to be a great evil. If, in the language of Story, (section 451): "constitutions are not designed for metaphysical or logical subtleties, for nicety of expression, for critical propriety, for elaborate shades of meaning, or for the exercise of philosophical acuteness or judicial research," if "they are instruments of a practical nature, fo .nded on the common business of life, adapted to common wants, designed for common use, and fitted for common understanding;" if "the people must be supposed to read them with the help of common sense, and cannot be presumed to admit in them any recondite meaning or extraordinary gloss," there can be no question that the Legislature had full power, under the constitution, to enact the statute complained of. Our attention has not been called to any other section of the constitution which denies, either expressly or by implication, the exercise of such power; and, until it is clearly demonstrated that the section in question is so in conflict with some other provision as not to be reconcilable with it, we must hold the act valid.

In the case of *Turner v. Commonwealth*, 2 Met. (Ky.) 619, the defendant applied for a change of venue on the ground of the hostility and prejudice of the judge, and asked that an order be made for the election of a special judge. This was refused, and defendant appealed. The constitution of that State, after providing, as ours does, for the election of circuit judges, contains the following clause: "The General Assembly shall provide, by law, for holding circuit courts when from any cause the judge shall fail to attend,

or, if in attendance, cannot properly preside." Under the power thus conferred, the Legislature of that State passed a law containing the following provision, viz: "When from any cause the judge of the circuit court fails to attend, or, if in attendance cannot properly preside in a cause or causes pending in such court, the attorneys of the court who are present shall elect one of its members, then in attendance, to hold the court for the occasion, who shall accordingly preside." It was held in that case that the circuit court committed· error in refusing to direct and order an election of a special judge in pursuance of the provisions of the statute, and for this error the judgment was reversed. The statute has been in existence in that State for years, and so far as we are advised by the reports, its constitutionality has never been questioned. In the case of *Brown v. Buzan, supra,* under a provision of the constitution of·the State of. Indiana, which declares that the judges of the supreme and circuit courts shall be elected by the people for six years, but that provision may be made by law for holding the circuit court when the judge thereof shall be temporarily unable to attend, the power of the Legislature to enact a law similar to our own seems to have been conceded. The cases referred to by counsel in 39 Wis. 390, and 3 Brevard 500, do not support the views urged by defendant's counsel. It does not appear that either the constitution of Wisconsin or of South Carolina conferred upon the Legislature of·either State the power to provide by law for holding circuit court when the judge from any cause could not hold it, and the acts in those cases were declared void because there was no delegation of such power in the constitution.

The only other objection to be considered is to the action of the court in admitting the evidence of one Holliday as preserved in the bill of exceptions taken in a former trial of the cause, (said witness in the meantime having died,) to be read in evidence to the jury. The objection made to its

4. TESTIMONY OF DECEASED WITNESS: criminal practice.

introduction was that no sufficient foundation had been laid. It is shown by the evidence of one Ashring that said Holliday, the witness on the former trial, was dead. It was also shown by the evidence of one T. B. Haughawout that he kept the minutes of the testimony on the former trial, and prepared the bill of exceptions from the minutes kept by himself and Mr. Robinson, that when the bill of exceptions was being settled, interlineations were made by Mr. Hardin for defendant, and by Garrison for the State; that the bill of exceptions was agreed upon in the presence of the judge and attorneys for the State and defendant; that he could not state that it contained all of the testimony of witness.

Judge Cravens, who presided on the first trial of defendant, and heard the witness, Holliday testify, and who signed the bill of exceptions containing his evidence, was introduced as a witness. According to the bill of exceptions in the case now before us, signed by Haughawout, Robinson and Phelps, defendant's attorneys, as bystanders, the special judge refusing to allow it to be filled, because it did not correctly state the evidence of said Cravens, he (Cravens) testified that he could not recollect the substance of all that the witness said. The bill of exceptions taken on the former trial, was then handed to witness (over the objection of defendant) who was asked if it contained the substance of the evidence of witness, to which he replied that he thought it contained the substance of the testimony. He further testified that "if he had been asked to state the substance of the testimony of said witness without the bill of exceptions having been shown him, or his attention in some way called to it, he could not have given the substance of it." The court refused to allow the bill containing the above statement of the evidence of Cravens, because it did not truthfully state the evidence of Cravens, and attaches a statement of the evidence given by Cravens which he certifies is true. The evidence of Cravens is reported thus in the certificate of the judge: " He testified

that he remembered that a witness testified on the former trial as to having a skiff and ferrying defendant across Big Sugar creek.    Cannot now remember the name of the witness, without refreshing my memory from the bill of exceptions." The bill of exceptions was then handed to witness, who, after referring to it, and reading it, recognized the name of Holliday as being the witness.    He stated he could not recollect the name of the witness with out reference to the bill of exceptions.    The bill of exceptions was then identified by Cravens as the one signed by him as judge at the former trial.    In answer to a question by defendant's counsel, Cravens said he could not repeat every word testified to by Holliday, but that he did remember the substance of the evidence of the witness on the former trial, both his testimony in chief and cross-examination.    Witness then read the evidence as contained in the bill of exceptions, and stated that the testimony was substantially the testimony given by the witness on the former trial.    The evidence of Holliday, as contained in the bill of exceptions, was then read to the jury over defendant's objection.

There is also appended to the bill of exceptions what purports to be the affidavit of three jurors in partial support of the bill of exceptions signed by Phelps, Haughawout and Robinson, defendant's attorneys.    This affidavit was not sworn to before an officer authorized to administer oaths, the certificate of the notary public showing on its face that his office expired on the 24th of September, 1877, and that the affidavit was made before him on the 30th day of October, 1877, more than one month after he had ceased to be an officer authorized to administer an oath. It is provided in our statute that when the judge refuses to permit a bill of exceptions signed by bystanders to be filed, and shall have certified that it is untrue, either party in the suit may take affidavits not exceeding five in number in relation to its truth, and that such affidavits shall be deposited in the clerk's office, and on appeal or writ of

error shall be annexed to and form a part of the record of the cause.   It also provides that any court to which an appeal shall be taken, shall admit as part of the record of the cause taken therein upon its appearing to the satisfaction of such court, that the truth of the case is fairly stated in such bill, that the same was taken according to law, and that the court refused to permit the same to be filed.   It further provides, that the truth of such bill shall be tried by the affidavit required by this chapter to be taken and filed in the clerk's office.   Under the state of facts, there being no affidavits by which the truth of the bill can be tried, we might well regard the case as being here without any bill of exceptions; but waiving the determination of this question, the most favorable view that can be taken to give the defendant any standing in this court, is to give credence in the absence of the required statutory proof, to the statement certified by the judge as being true, who is presumed to be influenced by such bias as the attorneys for either party might possibly labor under.

Taking then this view of it, the question arises, was the evidence of Holliday given on the former trial as preserved in the bill of exceptions, so identified as to allow it to go to the jury as his evidence?   This is a question not entirely free from difficulty.   Ever since the case of *The State v. McO'Blennis*, 24 Mo. 402, it has been the settled law in this State that the deposition or written statement of a witness by him signed and taken before a committing magistrate, on a preliminary examination in a criminal case, can be read on subsequent trial of the cause, when it is shown, that such witness giving his evidence, has in the interim died.   This conclusion was reached in that case after the most careful consideration, and after a most thorough and exhaustive examination of the subject. It was there held that when a witness had once been examined in the presence of the accused, the constitutional provision which declares " that in all criminal prosecutions

the accused has the right to meet the witness against him face to face," does not forbid the reception of such evidence, nor, in any manner, impair the constitutional right of the accused in that respect.

The essence of the decision and the principle to be deduced from it is, that whenever the evidence of a witness in a criminal case has been given in a court, whether it be an examining or trial court, and such evidence has been given in the presence of the accused on his trial, and the witness dies between the former and any subsequent trial, the evidence given by him on the former trial, may, when proved, be given on a subsequent trial of the same charge, whether it rests in the knowledge of witnesses or is preserved in writing in some manner authorized by law. It having thus been definitely settled, that the evidence of a witness given on a former trial, under the above circumstances, may be used on a subsequent trial, when the witness has died in the mean time, the question arises how may it be proved? In the case of *United States v. Macomb*, 5 McLean, C. C. 286, Judge Drummond held that when a witness, since deceased, had testified at the preliminary examination in relation to the offense in the presence of the accused, witnesses would be permitted to prove what the deceased witness had testified to at such examination, and that so far as it related to such proof, the rules of evidence were the same in criminal as in civil cases. The conclusion was reached in that case after an examination of the authorities, that the evidence of a deceased witness might be proved in a criminal case in the same manner that it could be in a civil case, and that in making such proof it was not necessary to use the precise and exact words of the witness, but only to give the substance. On this last branch of the proposition there is some conflict of authority. While the courts of New York, Massachusetts and Indiana hold that the precise words of the witness must be given, the courts of Pennsylvania, Maryland, Virginia, Ohio, Illinois, Alabama and Vermont hold that the

substance of what the deceased witness testified to may be received. (*Cornell v. Greene*, 10 Serg. and Rawl. 14; *Chess v. Chess*, 17 Serg. and Rawl. 409; *Gildersleeve v. Caraway*, 10 Ala. 260; *Wagers v. Dickey*, 17 Ohio 439; *Marshall v. Adams*, 11 Ill. 37; *Caton v. Lennox*, 5 Rand. 36; *State v. Hooker*, 17 Vermont 659; *Kendrick v. The State*, 10 Hump. 479; *Sloan v. Somers*, 20 N. J. L. R. 66; *Bollinger v. Barnes*, 3 Dev. 460; *Young v. Dearborn*, 22 N. H. 372. In the case of *Cornell v. Greene*, *supra*, Justice Gibson, in speaking of effects of a rule requiring the evidence of the deceased, witness to be given in the exact words of the witness, observed: "The rule applied with that degree of strictness would be altogether useless in practice, for there is no man, be his powers of recollection what they may, who could be qualified to give such evidence; and if he should undertake to swear positively to the very words, the jury ought to disbelieve him on that account alone."

In applying the rule that the substance of what the deceased witness testified to, may be given in evidence, the distinction between narrating the statement made by the witness and giving the effect of his testimony should be observed. This distinction may be illustrated thus: If a witness state that A, as a witness on a former trial, proved the execution of a written instrument by B, that would be giving the effect of his testimony, which is nothing else than the result or conclusion. But if the witness states that A testified that he had often seen B write, that he was acquainted with his hand writing, and that the name subscribed to the instrument of writing exhibited was B's signature, that would be giving the substance of A's testimony, though it might not be in the exact words. The authorities above cited, we think, establish the following propositions: That in a criminal case the evidence of a deceased witness, who has testified on a former trial, may be proved and received on a subsequent trial of the same case between the same parties, the death of the witness first being shown; that the witness called to prove what

was testified to by the deceased witness, is not required to use the exact words of the witness, but may give the substance of all that he testified to; that in proving what was sworn to by the deceased witness, the same rules apply both in civil and criminal cases. It has been held by this court in the case of *Jaccard et al v. Anderson*, 37 Mo. 95, that the testimony of a witness since deceased, preserved in a bill of exceptions, filed on the former trial of the cause, could be received in evidence, when proved to be the substance of the testimony which the deceased witness gave on the former trial. In disposing of this question, it is remarked: "that it is to be presumed that the bill of exceptions contained all the testimony of the witness in chief, and on cross-examination, which the parties and their counsel deemed material to the issue, or necessary to be saved in a bill of exceptions. On the face of the testimony offered, it appears to have been all that was given or deemed important on the former trial. One of defendant's counsel testified that he assisted in preparing the former bill of exceptions, and that he thought it contained in substance the testimony of King at the trial, though "not all he may have said." We think it sufficiently appears that the substance of the whole testimony was contained in the bill of exceptions that was offered in evidence." Applying the principle of the decision to the case before us, it will manifestly appear that the court, in admitting the evidence of the deceased witness, Holliday, as preserved in the bill of exceptions, committed no error. Haughawout, one of the defendant's counsel, swears that he kept minutes of the testimony of the former trial, and prepared the bill of exceptions from his own minutes; and, Robinson, another attorney of defendant, that it was agreed on in the presence of the judge and attorneys for the State and defendant, but that he could not state that it contained all of the testimony of the witness. The evidence of this witness alone, under the views expressed in *Jaccard v. Anderson, supra*, might have authorized the court to receive the evi-

dence. The testimony of Haughawout is more than supplemented by that of Judge Cravens before whom the first trial was had, and who signed the bill of exceptions. He stated as certified to by the special judge, that he remembered the substance of the evidence of Holliday, the deceased witness, and that he thought the bill of exceptions contained the substance of the testimony. It is urged that the court committed error in allowing the witness, Cravens, to look at the bill of exceptions to refresh himself as to the name of the witness. This we think was permissible, and we can see no error in it authorizing a disturbance of the judgment. The evidence being thus identified, was read from the bill of exceptions, and it appears on the face of it, that the witness, Holliday, was examined in chief, cross-examined, re-examined and re-cross-examined. Looking through the whole case, from beginning to the end of the trial, we have discovered no error authorizing an interference with the judgment. The defendant has been twice put upon his trial, and has been twice found guilty of the crime of murder in the first degree. The evidence seems to warrant the finding of the jury. All the circumstances proven in the case (which we deem unnecessary to advert to here) point to defendant as the guilty party. Judgment affirmed, the other judges concurring.

AFFIRMED.